WILLIAM J. WOLFSON, Appellant, *v.* SYRACUSE NEWS-PAPERS, INC., Respondent.

Submitted October 19, 1938; decided January 3, 1939.

*Bernard L. Seligman* and *Benjamin H. Eicoff* for appellant.

*Benjamin E. Shove* for respondent.

Judgment affirmed, with costs; no opinion.

Concur: CRANE, Ch. J., LEHMAN, O'BRIEN and HUBBS, JJ. RIPPEY, J., dissents in the following opinion, in which LOUGHRAN and FINCH, JJ., concur.

RIPPEY, J. (dissenting). This is an action to recover damages for libel. At Special Term the amended complaint was dismissed upon motion of defendant made under subdivision 6 of rule 107 of the Rules of Civil Practice on the ground that the causes of action therein set forth were barred by the Statute of Limitations. The Appellate Division, by a divided court, has affirmed the judgment entered thereon. No answer has been interposed. The propriety of the relief granted must be tested by a reading of the complaint alone since the time and occasion are not appropriate for a consideration of the denials and defenses stated in the affidavit accompanying the notice of motion. The time of the commencement of the action is not in dispute.

The first cause of action set out in the amended complaint is based upon libelous articles published in defendant's newspaper on December 13 and December 16, 1935, respectively, and the second cause of action is based upon a libelous editorial published by defendant on December 16, 1935. The action was commenced on May 7, 1937. At the time those alleged libels were published an action to recover damages therefor must have been commenced within two years from the date of publication. By chapter 327 of the Laws of 1936 (in effect April 8, 1936) it was provided that a cause of action for libel must be commenced within one year after it had accrued, except that in cases where causes of action had previously accrued it must be commenced within two years from the date of accrual and within one year from April 8, 1936. If there were no further allegations in the complaint it would appear from the face of the complaint that prosecution of the action was barred by the foregoing provisions of the statute.

The causes of action here, however, are alleged to rest upon a republication by defendant of the libels continuously from the dates of their original publication to the date of the commencement of the action at its reading room and library which defendant maintained in the same building in which its newspaper was published and as a part of its publishing business and plant. It is alleged that defendant there maintained files of its newspapers containing the libelous articles which it made available to the public and invited the public to peruse. From affidavits read at the Special Term in opposition to the motion it appeared that in March, 1937, one Henry Pine availed himself of the facilities of the library and the invitation of defendant to use the same and then read the libelous articles set up in the complaint. If a republication thereby occurred the Statute of Limitations has not run against the maintenance of the action (*Mack, Miller Candle Co.* v. *Macmillan Co.*, 239 App. Div. 738; affd., 266 N. Y. 489).

The majority of the Appellate Division affirmed the judgment of the Special Term upon the theory that the papers on file were single copies of the original editions of the newspapers, the dates of the publication of which were the dates when the papers were first put upon the street and sold, and that the maintenance of the papers containing the libels in the files was a mere *passive* act, " a gratuitous courtesy," without a " conscious intent to induce the public or any individual to read the alleged libels " (254 App. Div. 211, 212), and not a conscious affirmative act constituting a republication for which the defendant would be liable, and suggests that plaintiff may have procured the alleged republication for the purpose of avoiding the running of the Statute of Limitations. I cannot find support in the allegations of the complaint or in any construction that may reasonably be put upon them to sustain any such theory upon this appeal. We are not interested in whether the alleged

republication was solicited or induced by the plaintiff or whether it was procured by the fraudulent contrivance of plaintiff with a view to the commencement of an action. Whether any of those matters, if true, would be available as a defense, either partial or complete, or could be pleaded in mitigation of damages is not before us and should not be considered as a ground for affirmance. We reiterate that we must take the complaint as we find it. Those matters should be left for decision when the occasion requires.

It is alleged that the libelous articles were published of and concerning plaintiff and that they were false. If so, they were, on their face, published of plaintiff in his trade and business and imputed criminal negligence or worse. The articles were libelous *per se*, malice is presumed and special damage need not be alleged (*Fry* v. *Bennett*, 5 Sandf. 54, 63; *Byam* v. *Collins*, 111 N. Y. 143, 150; *Moore* v. *Francis*, 121 N. Y. 199; *Turton* v. *N. Y. Recorder Co.*, 144 N. Y. 144). A publisher is chargeable with knowledge of the contents of his publication (*Corrigan* v. *Bobbs-Merrill Co.*, 228 N. Y. 58, 63, 64; *Staub* v. *Van Benthuysen*, 36 La. Ann. 467). No " conscious intent to induce " someone to read the libel need be shown since the publisher may be totally ignorant of the printed libel and still be responsible in damages for its publication. Whoever publishes a libel does so at his peril, and mistake, accident, carelessness and lack of motive or interest in publication or ignorance of its character is no defense (*Fox* v. *Broderick*, 14 Irish Com. Law Rep. 453; *Corrigan* v. *Bobbs-Merrill Co.*, *supra; Peck* v. *Tribune Co.*, 214 U. S. 185, 189). The alleged " passive " character of the act of the publisher is thus immaterial. An action to recover damages for libel arises and publication is complete when the defamatory words are read by or otherwise communicated to a person other than the defamed either through some direct or indirect act or through carelessness or negligence

of the defamer where the person to whom the communication is made understood their purport and meaning and knew to whom they referred (*Weidman* v. *Ketcham*, 278 N. Y. 129, 131). "The making of it known to an individual only is, indisputably, in law, a publishing" (*Rex* v. *Burdette*, 4 B. & Ald. 95, 143).

Bearing in mind the foregoing well-settled propositions, there can be no doubt that the complaint states good causes of action arising out of the original publication of the libels. Neither can there be any doubt that the complaint sufficiently states causes of action for republication. Each subsequent communication or a subsequent reiteration and publication of a libel constitutes a new and complete libel and gives rise to a new and separate cause of action (*Cook* v. *Conners*, 215 N. Y. 175, 179; *Mack, Miller Candle Co.* v. *Macmillan Co.*, supra; *Woodhouse* v. *New York Evening Post, Inc.*, 201 App. Div. 9; *Sharpe* v. *Larson*, 70 Minn. 209). The result cannot be affected by the sometimes asserted rule that when a newspaper is printed and put out on sale that constitutes publication as of the date of printing and first distribution as to the whole world and thereby but one cause of action arises. That has been advanced as a rule of convenience and to avoid a multiplicity of actions, especially applicable to newspapers where a large number of copies of a single edition or printing are put out. In such a case, the number of copies issued and the breadth of the circulation is open for consideration on the question of the amount of damages to be awarded (*Bigelow* v. *Sprague*, 140 Mass. 425, 427). It has been asserted that, after the edition of the newspaper is put on sale and the publisher loses all control over the circulation, it would be unreasonable and illogical to hold that the selling of a single copy of that edition at a time subsequent to the date of the printing and distribution of the edition without a new and affirmative act of the publisher or his agent to effect the sale would constitute a new publication. In that case, it

is said, the later sale would be the natural and probable result of the original publication (*Schoepflin* v. *Coffey*, 162 N. Y. 12). But the keeping on file in its building for public examination the files of its newspapers containing the libels was no part of the original publication and sale. The reading of the libels by Pine and consequently their publication were not the necessary, natural and probable result of the original publication. The proximate cause of the injury to plaintiff, occurring in March, 1937, was not the publication in December, 1935. When the publisher placed the printed libels on file it performed a new act entirely different in purpose, character and effect from the original act of printing and distribution; it then placed the libelous articles where they could be found and read and by invitation, in the eyes of the law, procured their reading with exactly the same effect as though the publisher had purposely and personally handed them to the reader and told him to read them. The preservation and holding out for public consumption in the files of the newspaper in its library of the sheets containing the libelous matter are not merely " a gratuitous courtesy " but are an open invitation to examine and read. They do not consist of a " passive act " but, on the other hand, they are definitely affirmative in their nature and are an incident of the newspaper publisher's continuous solicitation of the public good will for its own profit and advantage. The exhibition of the libelous matter or its suppression was within the immediate control of the publisher. If the defendant sold to a person other than the one libeled a copy of the libel even though published many years before and even though it had been induced to do so by the plaintiff, that sale would be sufficient to defeat the plea of the Statute of Limitations (*Duke of Brunswick* v. *Harmer*, 14 Q. B. 185; Odgers on The Law of Libel and Slander [6th ed.], p. 493), or had it negligently left the alleged libelous publications on the walls of its building for everyone to see it could not claim that the

722

original publication was the only publication that constituted the libel (*Byrne* v. *Deane*, [1937] 1 K. B. 818, 834–838). In principle, those cases are clearly analogous to the case at bar. The fact, if it be a fact, that it is customary for newspaper publishers to keep their files open for public consumption as " a gratuitous courtesy " gives the defendant no special immunity from liability. By leaving the libels open to the public and inviting the public to read them the defendant might reasonably anticipate that someone other than the one defamed would see them, read them, understand them, and learn of their application to plaintiff.

Newspapers, as such, have no special or peculiar privilege (*Haynes* v. *Clinton Printing Co.*, 169 Mass. 512). The publisher has no social, moral or legal duty to the public or to a third person to maintain a reading room containing back files of its newspapers for public consumption or to keep its back files there or elsewhere where they may be examined and perused or to communicate defamatory matter. If it had, it might be absolved from blame if the libelous matter came into the hands of others than the one defamed (*Van Wyck* v. *Aspinwall*, 17 N. Y. 190; *Fowles* v. *Bowen*, 30 N. Y. 20; *Sunderlin* v. *Bradstreet*, 46 N. Y. 188, 193; *Byam* v. *Collins, supra*). The rule, by necessity and on principle, is different where public libraries or repositories of reading matter innocently, ignorantly and in good faith receive and hold open for examination and perusal libelous matter published by others (*Emmens* v. *Pottle*, 16 Q. B. D. 354; *Mallon* v. *Smith*, 9 T. L. R. 621; *Martin* v. *Trustees of British Musuem*, 10 T. L. R. 338.) In the *Martin* case a distinction was made between the publisher who makes sales after the original publication, for he would be liable " on the ground of social policy that if a man chose to sell books or papers he must take the consequence of his acts if he knew that they contained libellous matter," and the public library, which has " a vast public duty

cast on the trustees to receive all books sent and purchase others," and who have no duty to inquire into or to know the character of the books asked for and used by the public (Cf. *Corrigan* v. *Bobbs-Merrill Co., supra*). This rule was laid down in the *Martin* case as a general one, although it appeared in that case that the books were purchased by the trustees under powers received through the duty imposed by the English Copyright Act and were exhibited as required by the statute (26 Geo. II, ch. 22). But, in the case of a circulating library which bought, sold or rented books as a business for private profit, the proprietors would be held responsible as publishers (*Vizetelly* v. *Mudie's Select Library, Ltd.*, [1900] 2 Q. B. 170; 69 L. J. Q. B. 645; 16 T. L. R. 352). There is no privilege for newspapers maintaining their own reading room for their own profit and advantage in connection with their business. On the other hand, the public library is in its nature a quasi-public institution which is maintained for the benefit of the public and is not in the business of holding out and distributing publications for profit.

I am of the opinion that the complaint upon its face states good causes of action not barred by the Statute of Limitations.

The judgments appealed from should be reversed, with costs, and the motion denied, with ten dollars costs.