## WINROD v. McFADDEN PUBLICA-TIONS, Inc.

### No. 43 C 867.

District Court, N. D. Illinois, E. D.

Sept. 17, 1945.

Vogel & Bunge, of Chicago, Ill., for plaintiff.

Gann, Secord, Stead & McIntosh, of Chicago, Ill., for defendant.

LA BUY, District Judge.

In plaintiff's libel action the defendant has pleaded the Statute of Limitations and has moved for the entry of summary judgment sustaining the said Statute of Limitations and dismissing plaintiff's suit. In support of this motion for summary judgment, the affidavits of Meyer Dworkin, Irving B. Simon and Robert E. Rothwell have been filed. These affidavits show that the issue of the magazine "Liberty" dated August 8, 1942, which contained the article which is claimed to be a libel upon plaintiff, was on June 29, 1942, delivered to the printer; that said issue of "Liberty" was shipped to various periodical distributors throughout the United States during the period from July 17, 1942, to July 28, 1942; and on July 29, 1942, the said issue was placed on public sale by the news distributing agencies at the various newsstands and other places where the public purchases magazines. The affidavit of Robert E. Rothwell, Traffic Manager of the defendant, sets forth that: "No magazine of said issue was mailed to subscribers after July 28, 1942, with the exception that where a subscriber reported either non-receipt of his copy of said issue or receipt of a copy in a damaged condition, replacement copies were mailed to these subscribers."

This suit was filed on August 4, 1943, and the pertinent Statute is Section 14, Chapter 83, Illinois Revised Statutes, 1943, which provides that actions for slander or libel shall be commenced within one year next after the cause of action accrued.

No counter affidavits have been filed by the plaintiff so the affidavits presented must be taken as true, but no infer-

ences must be read into these affidavits and they must be held strictly to the facts alleged. Under these affidavits it is clear that the August 8, 1942, issue of Liberty Magazine was composed, printed and delivered by the defendant to its subscribers and to the periodical distributors with whom the defendant dealt all before August 4, 1942, and that it was placed on public sale on newsstands on July 29, 1942.

■ Under the pertinent section of the Limitation Act, the bar arises one year after the cause of action accrues, and the cause of action in libel cases accrues when publication of the libel is made.

■ In the case of newspapers, periodicals, magazines, tracts, pamphlets and other means of distributing news, facts, fiction or information by printing, mimeographing or writing, there are factors other than the mere writing and mailing of a single communication. In the case of a magazine, periodical or book, it must be composed, printed and distributed and all of these factors are mere steps in the general purpose of presenting and distributing a printed composition to the public for its examination and reading. In such cases the composition, printing and distribution when completed must be taken as the one act of publication. Such is the prevailing weight of authority. United States v. Smith, D.C., 173 F. 227; Means v. Macfadden Publications, Inc., D. C., 25 F.Supp. 993; Cannon v. Time, Inc., D. C., 39 F.Supp. 660; Backus v. Look, Inc., D. C., 39 F.Supp. 662; Fried, Mendelson & Co. v. Edmund Halstead, Ltd., 203 App.Div. 113, 196 N.Y. S. 285; Wolfson v. Syracuse Newspapers, Inc., 254 App.Div. 211, 4 N.Y.S.2d 640.

In Julian v. Kansas City Star Co., 209 Mo. 35, at pages 71, 72, 107 S.W. 496, at page 500, the court said: "We agree with counsel for defendant that the one issue of the newspaper, though it may have been of many thousand copies distributed in many different counties, gave but one cause of action; but to reach that conclusion we must say that there was but one publication. If we should say that the publication in Jackson county was a publication distinct from that in Platte county, then we would have to say that there were more than one publication and more than one cause of action. But there was but one publication—one utterance—and though some of the papers did not reach their destination as soon as others, yet they all emanated from the one act and all constituted but one libel,

if libel at all. It is the publication of the libel, not the printing of it, that gives the right of action."

Under this ruling the publication of a libel in a magazine or newspaper cannot be segregated into the component parts of composition, printing and distribution, and each part held to be a different publication of the libel. The same result is arrived at by other courts which hold that if the plaintiff counts upon one particular copy of the newspaper or magazine, that the numerous copies of the magazine are but repetitions of the libelous article. In Galligan v. Sun Printing & Pub. Co., 25 Misc. 355, 54 N.Y. S. 471, at pages 473, 474, the court said: "When a libelous article is republished before the commencement of an action, a separate action cannot be maintained on such republication. The repetition of the publication may be pleaded and shown on the trial and bearing up the malice of the defendant and the extent of the injury and damage to the plaintiff." And the court also said (54 N.Y.S. at page 473): "There seems to be no escape from the conclusion that the plaintiff cannot be permitted to split up the alleged libelous article, or bring a second action thereon." Other courts base their holding on the ground of necessity and convenience, as was said in the dissenting opinion of Judge Rippey in the case of Wolfson v. Syracuse Newspapers, Inc., 279 N.Y. 716, at page 720, 18 N.E.2d 676, at page 678, where the learned Judge says: "The result cannot be affected by the sometimes asserted rule that when a newspaper is printed and put out on sale that constitutes publication as of the date of printing and first distribution as to the whole world and thereby but one cause of action arises. That has been advanced as a rule of convenience and to avoid a multiplicity of actions, especially applicable to newspapers where a large number of copies of a single edition or printing are put out. In such a case, the number of copies issued and the breadth of the circulation is open for consideration on the question of the amount of damages to be awarded. Bigelow v. Sprague, 140 Mass. 425, 427, 5 N.E. 144 [145]."

■ Whether the composition, printing and distribution are but one publication; whether the distribution of numerous copies of the same issue give rise to but one cause of action; whether the distribution of numerous copies is but one wrong which cannot be split into several causes of action; or whether the rule be adopted be-

cause of convenience in order to avoid multiplicity of actions, the same end result is accomplished. That is that the cause or causes of action accrue on the date of publication. In this case the original publication of the August 8 issue must be held to have taken place not later than July 29, 1942. Any cause of action, therefore, which accrued to the plaintiff by reason of the original publication must be held barred by the Limitation Act. Therefore, there can be no recovery herein for the original publication of the August 8, 1942, issue.

The plaintiff, however, contends that there was a republication of the libelous article, and points to the fact that the complaint alleges in paragraph 5 that the defendant distributed and sold copies of the August 8 issue on the 5th, 6th, 7th and 8th days of August, and for several weeks thereafter by itself and through its agents and employees. The affidavit of Rothwell does not set forth any date as to when the copies referred to in his affidavit were mailed out or delivered after July 28, 1942, so that such mailings or deliveries might well be within the dates alleged in the complaint. Also, there is no statement in any of the affidavits as to whether the defendant mailed out any copies of the August 8 issue to subscribers, if new subscriptions were received within a short time before July 29, 1942, and if it did mail same out when same were mailed. And there is no statement in any of the affidavits with reference to sales and deliveries by the defendant when requests were made, if they were made, for back numbers of the August 8 issue.

Several courts, especially the New York State courts and the Federal District courts in the New York City District, have held that the later mailing out of copies of a magazine to replace copies lost or damaged in distribution or in response to requests for the purchase of single copies does not constitute a republication. Means v. Macfadden Publications, Inc., D. C., 25 F.Supp. 993; Cannon v. Time, Inc., D. C., 39 F. Supp. 660; Backus v. Look, Inc., D. C., 39 F.Supp. 662; Wolfson v. Syracuse Newspapers, Inc., 254 App.Div. 211, 4 N.Y.S.2d 640.

The decisions in the above cases are based upon two premises, first, that the mailing out of single copies of the magazine after the original distribution is a part of the original publication, and second, that to hold otherwise would nullify the statute of limitations. But this court does not agree with the reasoning of those cases.

If this rule is adopted the publisher could with immunity print a large number of extra copies of an issue containing libelous matter, retain them on hand and from time to time through the years mail them to members of the general public. The original publication may have been forgotten, but the continuous mailing of same by the publisher year after year would reiterate and emphasize the libel, and could possibly after repeated mailings cause more damage to the person against whom the libel was directed than the original publication. The publisher might, after the original publication, mail or deliver copies of the original issue to libraries, societies or organizations with requests that such copies be retained for future reference, or the defendant might mail out or deliver copies of the magazine in which the libelous article was blue penciled or marked in order to call particular attention to the article. In all of these situations there would merely be a sending out or distribution of the original issue, and there would be no reprinting of such issue.

If the defendant in this case had reprinted and recirculated the August 8 issue at a subsequent date, there is no doubt that such reprinting and recirculation would amount to a republication of that issue. The court in the case of Backus v. Look, Inc., D. C. 39 F.Supp. 662, attempted to make the distinction between such reprinting and release and the subsequent sale of single copies on request, saying (39 F.Supp. at page 663): "The issue of the magazine complained of was never reprinted, published or released by the defendant but several miscellaneous copies were mailed out later to replace copies lost or damaged in distribution, or in response to requests for the purchase of single copies. This did not constitute a republication." An examination of the reasoning of this case shows that the court based its decision on whether the copies which were mailed out were copies of the original issue or whether they were reprinted copies. But this court cannot, on principle, distinguish between the act of a publisher in mailing out a copy of the original issue from the act of a publisher in sending out a magazine which is identical in composition but which has merely been run through the printing presses a second time. Assuredly, the mere act of reprinting and mailing the same

magazine out to the public upon request has the same effect as if one of the unsold copies of the original issue were mailed out. If the publisher had 50,000 copies of the original issue on hand unsold after the original publication, and sold same to persons requesting copies of the issue, such act of the publisher should have no other or different legal significance than if the publisher reprinted 50,000 copies of that issue and sold them to the public upon request. In both cases the effect upon the person libeled would be identical, and he should have the same remedy in both cases.

On the question of nullifying the statute of limitations, this court cannot agree with the statement of the court in the case of Wolfson v. Syracuse Newspapers, Inc., 254 App.Div. 211, 4 N.Y.S.2d 640, 642, where the court says: "For example, if plaintiff's position is correct in law it must follow that, although a book may have had only one publication 20 years ago, if the publisher continues to make unsold copies of the single publication available to the public to-day, by sale or otherwise, such conduct amounts to a republication of any libel which the book contains and thereby becomes actionable. Believing that such a rule would nullify the clear purpose of the statute of limitations, we affirm the order dismissing the amended complaint and the judgment entered thereupon, with costs." This court does not believe that the statute of limitations is so nullified. The publisher of a libel has it entirely within his own control as to his actions with reference thereto. After the publication of the original libel, the statute of limitations becomes effective as to the original publication, and if the publisher does nothing further, the bar of the statute becomes absolute at the end of one year. But if the publisher chooses to subsequently sell unsold copies of the magazine containing the libel, then the publisher by his own act has chosen to again send out to the public the magazine containing the libel. It is only some action of the publisher that can cause another cause of action to arise, and he should not be permitted to plead that he originally committed a wrong against the person libeled by publishing a libelous article, and because a cause of action for that wrong has been outlawed by time, that he may with immunity continue to broadcast that libel by sales to the public of unsold copies of the original issue. As above pointed out, there may be a large number of copies of the original issue remaining unsold in the hands of the publisher, and to hold that the publisher may retain those unsold copies on hand for an indefinite period, selling them from time to time to persons who request copies of same, would permit the publisher to continue the original libel for a long period of time, with the person libeled in the original issue helpless to call the publisher to account. To so hold would mean that the publisher of a libel could be protected against subsequent libels by the very fact that he had at one time published the libel. To such a doctrine this court cannot subscribe; to such an illogical conclusion this court must register its vigorous dissent. Every citizen of this country is entitled to the full protection of its laws, but such a holding would leave an innocent person subject to constant libels against his character without any redress on his part.

Under such circumstances the so-called rule of convenience to avoid multiplicity of suits is not infringed, as but one action may still be brought based on any republication up to the time of the trial of the cause; the rule that subsequent sales are but repetitions of the original libel must yield to the fact that but one suit can be brought and that the publisher should not be permitted to plead his own wrong as a defense; and the rule that there is but one publication by such republication is also overthrown by the logic and reason of the case.

The above rule has certain limitations. If an issue of a magazine is originally published on a certain date and the publisher does not send out any other copies of such issue, or direct the sale of other copies of same, then the publisher is not responsible for the acts of third parties who may have received copies and sold them or retained same for their own purposes. For example, if a library which has no connection with the publisher should in permanent form bind up copies of a magazine containing a libelous article, and persons from time to time should read the libelous article, there would be no republication of the original issue. Likewise, if a book or magazine dealer not connected with the defendant should retain copies of the issue in question and over a period of years should sell to customers such copies, these sales would not amount to a republication of hte original amount to a republication of the original issue by the publisher. Thus, all sales, distributions, exhibitions or repetitions of the original issue by persons not connected

with the original publisher would not be a republication. On principle and reason the original publisher should and can only be held liable for his own acts or those actions of others which he has expressly or impliedly authorized. There can be no question of implied authority as to sales by others not connected with defendant, nor the exhibition of the magazine by persons who have retained copies for reference. Because if such were the rule, there could be no limitation of action until the printing upon the paper of the magazine had become illegible or the paper itself had disintegrated. Such a rule would outlaw the purpose of the statute of limitations and render the limitation applicable only when the paper of the magazine had turned into dust. So long as the magazine could be read, it could be exhibited and such exhibition to a person not the one libeled by the article would be a republication, although the publisher had no connection whatsoever with such exhibition of the magazine. The adoption of such a rule would inevitably destroy the statute of limitations and make such Act not a statute of repose but one of action which could be revivified at any time for countless years, dependent upon the time within which the printing in the magazine would remain legible and upon the acts of persons in no way connected with the original publisher. But as above pointed out this does not apply when the publisher himself republishes the article.

■ In the present case the original publication of the August 8 issue was completed by the composition, printing and distribution of that issue not later than July 29, 1942. Said issue had been mailed out to defendant's subscribers and it had sold said issue to independent distributors for sale on July 29, 1942. The fact that public newsstands, newsdealers, newsboys or other persons not connected with defendant should after that date make sales of copies of said issue would not amount to a republication by the defendant as it had completed publication when such issue was circulated to its subscribers and delivered to the news distributors for public sale on July 29, 1942.

The court is, therefore, of the opinion that insofar as the complaint is based upon the original publication by the defendant, or with reference to sales of the August 8, 1942, issue by persons other than the defendant, that the complaint will not lie. In so stating the court is not passing on the question of whether such acts would or would not be admissible in evidence on the question of damages if there should be a trial of this cause. The court is further of the opinion that the only cause of action upon which plaintiff may base his suit is upon the copies sent out subsequent to August 4, 1942. Upon that question the plaintiff's cause of action must stand, and upon that question plaintiff is entitled to a trial herein.

The order of the court will be that the motion for summary judgment be denied, with leave to plaintiff if he so desires to amend his complaint.