Van Voorhis, J.
The action is for libel, and has been dismissed upon motion supported by affidavits pursuant, to rule 107, subdivision 6, of the. Rules of Civil Practice, on the ground that the cause of action is barred by the Statute of Limitations applicable to actions of this character, which is one year (Civ. Prac. Act, § 51). It seems that the defendant, Gr. P. Putnam’s Sons, published a book entitled “ Total Espionage ”, in which plaintiff is alleged to have been referred to in defamatory terms. This book was originally printed and published in 1941. Since then there have been seven other printings. The last time when the book came off the press was December 27, 1943, and distribution of that edition began in March, 1944. This action was commenced July 2, 1946. During the year prior to the commencement of the action sixty copies were sold by defendants Gk P. Putnam’s Sons and Books, Inc., in quantities ranging from one to fourteen copies per month. * On the basis qf these sixty copies, plaintiff asserts the right to maintain this action.
Under the, common law, which has been carried into New York decisions of comparatively recent date, each reiteration of libelous matter constitutes a new and complete libel, and gives rise to a new and separate cause of action. (Cook v. Conners, 215 N. Y. 175; Mack, Miller Candle Co. v. MacMillan Co., 239 App. Div. 738, affd. 266 N. Y. 489; Woodhouse v. New York Evening Post, Inc., 201 App. Div. 9; Odgers, Libel and Slander [6th ed.], p. 493.)
In Wolfson v. Syracuse Newspapers, Inc. (254 App. Div. 211, affd. 279 N. Y. 716), it was held that the fact that a newspaper publisher kept in its office bound volumes of prior issues, then more than one year old, which were exhibited to a third party at Ms request, did not constitute a new publication.
On this appeal it is not necessary to decide whether the common-law rule has been modified in this State to the extent indicated in Hartmann v. Time (64 F. Supp. 671, citing Age-Herald Pub. Co. v. Huddleston, 207 Ala. 40, 37 A. L. R. 898), i.e., that the issuance of a newspaper or magazine, although it consists of numerous copies widely distributed, gives rise to one cause of action, there being but one- publication, and that the Statute of Limitations applicable to subsequently distributed *593 copies, runs from the date of such publication. That such a modification of the common-law rule might be adopted in this State, is indicated by statements contained in the prevailing opinion of the Appellate Division in the Wolf son case (254 App. Div. 211, affd. 279 N. Y. 716, supra) as well as by the case of Fried, Mendelson & Co. v. Halstead, Ltd. (203 App. Div. 113, 115). The Wolfson case (supra) however, was decided by a majority of one vote in both the Appellate Division and in the Court of Appeals, which indicates that the principle of law involved therein is not likely to be extended very far beyond the facts which were presented. It is not thought that the rule contended for can extend to books, as distinguished from newspapers or magazines. A newspaper or periodical becomes stale soon after its publication, and only minimal damage is likely to be ' done by the circulation or recirculation of numbers that are out of date.
The underlying reason for holding that there is but one publication in the case of a newspaper or periodical, does not hold good where books are concerned. Although the dates of the various printings are generally on the flyleaf of a book, it is not presented to the public as of a particular date. One would not have considered, for example, that Alexander Pope’s Dunciad'— passages in which may well have been libelous — would be read only at the time when it first issued in book form from the press, like a number of the Daily Mirror or the Saturday Evening Post. Books, if well written, may remain in vogue for many years and be sold regularly out of stock to satisfy a more or less continuous popular demand. The mere circumstance that the book in this case proved to be of ephemeral public interest, and that the number of copies sold in the year preceding commencement of this action was small, should not result in the formulation of an erroneous rule of law, which might prove more unjust in other cases. The publisher of a libel in book form should not be permitted to escape the consequences of his acts in making subsequent sales from his shelves, by asserting that he should be exonerated on account of having been guilty of previous wrongs in printing or selling, at an earlier date or dates, other copies of the same defamatory matter.
In the case of books, at least, as was stated in Winrod v. McFadden Publications, Inc. (62 F. Supp. 249, 251-252), and, indeed, as is repeated on page 9 of respondents’ brief: “ There is no practical difference between sales of copies from stock' and sales from a new printing or impression Bespondents *594 so contended, in arguing that the reprinting by a publisher of a libelous book does not constitute an independent wrong. That contention is untenable, but the statement that there is no practical difference between sales of copies of books from stock and sales from a new printing is true.
In drawing the distinction which has been mentioned between newspapers and magazines on the one hand, and books on the other, It may be noted that Seelman on the Law of Libel and Slander was cited in support of the decision in Wolf son v. Syracuse Newspapers, Inc. (254 App. Div. at p. 212), whereas in a supplement to his text book written after the Wolf son case (supra) had been affirmed by the Court of Appeals, the learned author said (p. 39): “ The argument of Rippey J., in the dissenting opinion (279 N. Y. 717, Wolfson v. Syracuse Newspapers, Inc.), is a commanding presentation of the historical viewpoint of publication. Certainly, if a publisher sells a copy of a book, which he has offered and still offers for sale, it is a conscious independent act.” (Italics supplied.)
Manifestly, the amount of damages sustained by plaintiff will be small in consequence of the sale by defendants of the 60 volumes disposed of during the year prior to the commencement of this action, since plaintiff’s right to recover is barred for the damage to his .reputation arising from the antecedent sales of upwards of 14,000 volumes. A jury would be called upon to take this into consideration, notwithstanding that if the defamatory matter be libelous per se some damages are presumed.
The judgment and order appealed from should be reversed, with costs to the appellant and the motion to dismiss the complaint under the Statute of Limitations denied.
Peck, P. J., Glennon, Dose and Callahan, JJ., concur.
Judgment and order unanimously reversed, with costs to the appellant and the motion denied. [See 273 App. Div. 759.]