Gerald B. Winrod, Appellant, v. Time, Inc., Appellee.

Gen. No. 44,107.

60

Opinion filed April 1, 1948. Released for publication April 14, 1948.

VOGEL & BUNGE, of Chicago, and FOULSTON, SIEFKIN, BARTLETT & MORRIS, of Wichita, Kansas, for appellant; L. H. VOGEL, GEORGE C. BUNGE and FORREST S. BLUNK, all of Chicago, of counsel.

KIRKLAND, FLEMING, GREEN, MARTIN & ELLIS, of Chicago, for appellee; HOWARD ELLIS, J. B. MARTINEAU and GEORGES DAPPLES, all of Chicago, of counsel.

·MR. PRESIDING JUSTICE FRIEND delivered the opinion of the court.

Plaintiff brought suit on April 13, 1943, to recover damages for alleged libel printed and published in an issue of defendant's magazine, *Life,* dated April 13, 1942. Defendant moved to strike the complaint on the ground that although the publication bore the date printed on its cover, it had actually been published at least two days earlier, and hence the action was barred by the one-year Statute of Limitations (Ill. Rev. Stat. 1941, ch. 83, par. 14 [Jones Ill. Stats. Ann. 107.273]). Attached to defendant's motion were various affidavits from which it appeared, without dispute, that throughout the United States, subscribers to *Life* received their copies of the April 13, 1942, issue on or prior to April 11, 1942, and that copies of *Life* scheduled for newsstand sale during that week appeared for sale on newsstands throughout the country by April 11, 1942. The court, after considering the affidavits submitted, allowed the motion to strike, and entered the judgment

in favor of defendant from which plaintiff appeals.

■ Historically each delivery and sale of an article containing defamatory material was considered a publication that, defenses aside, gave rise to a separate cause of action. (*Duke of Brunswick v. Harmer* (1849), 14 Q. B. 185, 117 Eng. Rep. 75; *Rex v. Carlisle* (K. B. 1819), 1 Chit. 451.) However, with few exceptions (*Renfro Drug Co. v. Lawson* (1942), 138 Tex. 434, 160 S. W. 2d 246; *Holden v. American News Co.* (1943), 52 F. Supp. 24; section 578 b of volume III of the Restatement of Law of Torts (1938); Newell, The Law of Slander and Libel, 4th ed. (1924), sec. 192, pp. 236, 237; and Odgers on Libel and Slander, 6th ed. (1929), pp. 132 et seq.), courts and legal writers have recently recognized that this ancient rule ''is ill-suited to the needs of a culture demanding mass publication. . . . Hence, to escape multiplicity of suits and to make effective the statute of limitations, publication has been redefined in the light of the realities of this century'' and ''is now defined so as to include all the steps in the economic process by which news is disseminated. . . . Therefore, the composition, printing, and distribution of libelous material constitute only one cause of action.'' (59 Harvard Law Review, pp. 136, 137.) Section 578 b of the Restatement of the Law of Torts defines republication of libel as follows: ''Each time a libelous article is brought to the attention of a third person, a new publication has occurred, and each publication is a separate tort. Thus, each time a libelous book or paper or magazine is sold, a new publication has taken place which, if the libel is false and unprivileged, will support a separate action for damages against the seller.'' This viewpoint is the subject of comment in the recent case of *Hartmann v. Time, Inc.* (1946), 64 F. Supp. 671, and because that case, citing substantially all recent decisions, reflects the established authority on the question in this country, we quote therefrom at length.

Plaintiff there brought a libel suit in the District Court, Eastern District of Pennsylvania, exactly one year subsequent to the date appearing on the cover of the January 17, 1944, issue of *Life* magazine. In support of its motion for summary judgment defendant submitted affidavits setting forth facts substantially the same as those alleged in the case at bar relating to composition, editing, publishing, printing and distribution of the magazine. In granting defendant's motion for summary judgment the court, after quoting the pertinent portions of comment b in section 578 of the Restatement of the Law, made the following observation: "There is discernable, however, to a marked degree, a reluctance among the modern courts to apply that law when confronted with a controversy involving large distributions of printed matter such as are made by present day newspaper and magazine publishers. This turn in the law is highlighted in the case of *Age-Herald Publishing Co. v. Huddleston,* 1921, 207 Ala. 40, 92 So. 193, at page 196, 37 A. L. R. 898, where the court said: 'These old common law principles undoubtedly had their origin in relation to the single acts of individuals, in a primitive society, and cannot, either as a matter of principle or common sense, be applied without qualification to the publication of modern newspapers.' The rule of law to be applied in such circumstances is that the one issue of a newspaper or magazine, although it consists of thousands of copies widely distributed, gives rise to one cause of action, there being but one publication, and the statute of limitations runs from the date of such publication. The number of copies is considered as aggravating the seriousness of the publication, and therefore, being evidence of the extent of the injury, goes only to the matter of damages. *Winrod v. McFadden Publications, Inc.,* D. C. N. D. Ill. 1945, 62 F. Supp. 249, 250; *Forman v. Mississippi Publishers Corporation* [1943, 195 Miss. 90, 14 So. 2d 344, 148 A. L. R. 469]; *Backus*

*c. Look, Inc.,* D. C. S. D. N. Y., 1941, 39 F. Supp. 662; *Cannon v. Time, Inc.,* D. C. S. D. N. Y., 1939, 39 F. Supp. 660; *Means v. MacFadden Publications, Inc.,* D. C. S. D. N. Y. 1939, 25 F. Supp. 993; *Wolfson v. Syracuse Newspapers, Inc.,* 1938, 254 App. Div. 211, 4 N. Y. S. 2d 640, affirmed per curiam, 1939, 279 N. Y. 716, 18 N. E. 2d 676; *Fried, Mendelson & Co. v. Halstead, Ltd.,* 1922, 203 App. Div. 113, 196 N. Y. S. 285; *Age-Herald Publishing Co. v. Huddleston, supra; Brian v. Harper* [1919, 144 La. 585, 80 So. 885]; but see *Holden v. American News Co., supra; Renfro Drug Co. v. Lawson,* 1942, 138 Tex. 434, 160 S. W. 2d 246, 146 A. L. R. 732. In Pennsylvania the number of copies is taken into consideration in assessing damages: *Chambers v. Philadelphia Inquirer,* 1930, 14 Pa. Dist. & Co. R. 421; *Reed v. Patriot Co.,* 1939, 35 Pa. Dist. & Co. R. 466. In Sutherland on Damages (3rd Ed., 1904) Sec. 1207, at page 3490, it is said: 'All the utterances of the same charge constitute one slander, as all the copies of a newspaper containing a libel constitute one publication. The frequency of the utterances or the number of issues (copies) of a newspaper may be shown to prove the extent of publicity given to the defamatory charge; but only one recovery is allowed.' Further, it has been held, whenever the question was raised, that the later mailing of miscellaneous copies, such as occurred here, does not amount to an independent ground of action, not being a new publication. *Backus v. Look, Inc., supra; Cannon v. Time, Inc., supra; McGill v. Time, Inc.,* March 23, 1945, decided in the Circuit Court of Cook County, Illinois; *Hartmann v. Time, Inc.,* Index No. 5008–1945, — Misc. —, 60 N. Y. S. 2d 209, decided October 19, 1945; (1945) 59 Harv. L. Rev. 136; see also *Murray v. Galbraith,* 1908, 86 Ark. 50, 109 S. W. 1011, 126 Am. St. Rep. 1078; but see *Winrod v. McFadden Publications, Inc.,* supra, 62 F. Supp. at page 256. These decisions, while the reasons therefor are variously given by the

different courts, are grounded chiefly upon the practical realization that, under the doctrines expounded in the Restatement, a multiplicity of suits would result, and the purpose of the statute of limitations would be avoided. Although all the decisions cited were not rendered without express dissent, the views adopted have, in the main, been favorably commented upon: (1945) 59 Harv. L. Rev. 136; (1940) 38 Mich. L. Rev. 552; (1939) 6 Pitt. L. Rev. 46; (1938) 52 Harv. L. Rev. 167; (1923) 23 Col. L. Rev. 193; (1910) 10 Col. L. Rev. 150. A careful examination of the cases leads to the conclusion that the decided weight of authority in this country is, where large distributions of published matter are involved, that the cause of action accrues, for the purpose of the statute of limitations, upon the first publication, when the issue goes into circulation generally.''

The United States Circuit Court of Appeals (*Hartmann v. Time, Inc.,* 166 F. (2d) 127, partially vacated the judgment of the United States District Court in favor of defendant, but for reasons not affording plaintiff here any support. The *Hartmann* case involved the Full Faith and Credit Clause of the United States Constitution, which is not under consideration here, as well as an alleged libel published in an issue of *Life* following the January 17, 1944 issue. With reference, however, to the question of individual miscellaneous publications constituting separate causes of action, the United States Circuit Court of Appeals said: ''We think that the rule enunciated by the court below, the so-called 'single publication' rule, is the preferable one and is recommended both by logic and by public policy. Public policy must regard the freedom of the press and while the law must exact penalties for libel the instruments of free and effective expression, newspapers and magazines which are published on a nationwide basis, should not be subjected to the harassment of repeated law suits.''

Plaintiff is constrained to admit that under the foregoing rule ''publication'' of the alleged defamatory matter in this case occurred on April 11, 1942, the date of general release, but he contends that copies of the April 13, 1942, issue of *Life* were subsequently circulated. Defendant's affidavits admit that after the general release of the magazine was completed throughout the nation by April 11, 1942, certain miscellaneous copies were circulated to the general public up to and including April 18 and for some time thereafter, consisting of replacement copies for those reported lost or damaged, back-number copies supplied in response to occasional requests, copies mailed by special request on new subscription orders received within a few days before April 11, and newsstand copies sold for several days following April 11; and it is urged that these isolated transactions constituted publication or republication of the alleged libel. There is also considerable authority on this subject. Cases cited in *Hartmann v. Time,* 64 F. Supp. 671, hold in effect that where any distribution takes place after the original sale, no new cause of action will accrue if the subsequent distribution is reasonably connected, by trade practice relating to the type of printed matter involved, to the original distribution; but the partial validity of the conventional or older theory of libel, namely, that each sale constitutes a new publication, is recognized in so far as the number of people reached or to be reached by the libelous matter is considered in the computation of damages. *Winrod v. McFadden Publications* (1945), 62 F. Supp. 249; *Backus v. Look* (1941), 39 F. Supp. 662; *Cannon v. Time* (1939), 39 F. Supp. 660; *Means v. MacFadden Publications* (1939), 25 F. Supp. 993; *Wolfson v. Syracuse Newspapers* (1938), 254 App. Div. 211, 4 N. Y. S. 2d 640, aff'd per curiam (1939), 279 N. Y. 716, 18 N. E. 2d 676; *Age-Herald Publishing Co. v. Huddleston* (1921), 207 Ala. 40, 92 So. 193; *Chambers v. Philadelphia Inquirer*

(1930), 14 Pa. Dist. & Co. R. 421; 59 Harv. L. Rev. 136 (1945).

In *Backus v. Look, supra,* brought in the District Court for the Southern District of New York, the court held that ''The issue of the magazine complained of was never reprinted, published or released by the defendant but several miscellaneous copies were mailed out later to replace copies lost or damaged in distribution, or in response to request for the purchase of single copies. This did not constitute a republication. *Means v. MacFadden Publications,* D. C., 25 F. Supp. 993. It is also conceded that copies of this issue remained on public sale from December 5, 1939, to approximately December 19, 1939. The moving affidavits show that on or before December 4, 1939, all copies of the magazine Look, dated December 19, 1939, had been mailed to subscribers and all copies sold to wholesale distributors had been placed on common carriers for shipment. Under the authorities this would constitute a publication of the libel.''

In *Means v. MacFadden Publications, supra,* plaintiff sued on April 25, 1938, for an alleged libel appearing in the April 17, 1937, and two succeeding weekly issues of *Liberty* magazine. Defendant's affidavits in support of its motion for summary judgment showed that the last of the three issues was placed on public sale April 21, 1937. The plaintiff there contended that the magazines remained on the newsstands for a much longer period than the dates of publication claimed by the defendant, and that each new sale constituted a new publication. Commenting on this contention, the court said that ''this does not constitute a republication of the alleged libelous articles. The contention of the plaintiff cannot be correct. If her contention is correct, the Statute of Limitations would never toll; certainly never as long as there was in existence, an issue of these magazines which was capable of being passed about or sold. . . . The Statute of Limitations is a statute of repose. If the contention of the

plaintiff is correct, the very purpose of the Statute would be defeated." With respect to the sale of back-number copies on January 10, 1938, the court continued as follows: "There was no republication of the alleged libelous articles on January 10, 1938. That was nothing more or less than a purchase of old copies of this magazine, which had been published, circulated and put on the newsstands for sale and circulation on the dates set forth in the affidavits herein, to wit, April 7th, April 14th and April 21st, at which times the harm done to plaintiff, if any, was inflicted."

In *McGlue v. Weekly Publications, Inc.* (1946), 63 F. Supp. 744 (District Court of Massachusetts); plaintiff brought suit on January 22, 1945, for libel based on the issues of *Newsweek* dated January 24, 1944. Defendant's affidavits showed that by January 19, 1944, all copies for the general public throughout the country had been delivered for shipment, and that on the following day copies appeared on newsstands throughout Massachusetts and were available to the public. Like the case at bar, publication had occurred one year and two days before suit was brought, and a small number of miscellaneous copies were mailed out subsequently from defendant's office in New York City by way of replacement or in response to special requests. Defendant's motion for summary judgment was allowed, based on the Massachusetts one-year limitations statute, and the court, in commenting on the question now before us, said that "The authorities are clear that neither the continued sale of copies of the same publication, nor the sending out of additional copies by way of replacement, new subscribers or back numbers will prevent the operation of the period of limitation from the time of the original publication," citing *Means v. MacFadden Publications, supra,* and *Cannon v. Time, supra.*

The theory for which plaintiff contends evidently originated with the *Duke of Brunswick v. Harmer,* 14 Q. B. 185, in 1849. That was an action for libel in

respect to a newspaper published more than 17 years before the action was brought, and the court ruled that a plea of the statute of limitations was negatived by proof that a single copy had been purchased from the defendant publisher within the statutory period before the filing of suit. The court held that defendant, by the sale and delivery of that single copy of the newspaper, ''published'' the libelous matter, and that as to that particular ''publication'' the statute of limitations had not run. Although that may have been the law of England a century ago, the great weight of authority in this country is directly contrary. The *Duke of Brunswick* case has been criticized for its invalidation of the statute of limitations, for it holds in effect that there can never be any repose by limitation in a libel suit.

One of the first decisions in the United States to challenge that doctrine was the leading case of *Wolfson v. Syracuse Newspapers* (1938), 4 N. Y. S. 2d 640, 254 App. Div. 211, aff'd by the New York Court of Appeals, 279 N. Y. 716, 18 N. E. 2d 676. Plaintiff there brought suit May 7, 1937, on a cause of action for an alleged libel which had expired, with reference to defendant's original publication thereof, on April 8, 1937, contending that the statute of limitations had not run because defendant had made accessible to the public bound copies of the newspaper containing the issue complained of. MR. JUSTICE LEWIS, speaking for the majority of the court, held that this did not prevent the statute from running, and in granting defendant's motion to dismiss the complaint, said: ''If the bar of the statute of limitations can be lifted by means such as plaintiff now seeks to employ, we may no longer term it a 'statute of repose' which makes effective a purpose which the Legislature has conceived to be imperative—to outlaw stale claims. [Citing authorities.] The rule for which the plaintiff contends would not only permit libel actions against news publishers

without limitation as to time but its scope would extend beyond the field of journalism. For example, if plaintiff's position is correct in law it must follow that, although a book may have had but one publication 20 years ago, if the publisher continues to make unsold copies of the single publication available to the public to-day, by sale or otherwise, such conduct amounts to a republication of any libel which the book contains and thereby becomes actionable. 'Believing that such a rule would nullify the clear purpose of the statute of limitations, we affirm the order dismissing the amended complaint. . . .'' In discussing the fact that defendant had made accessible to the public bound volumes of the newspaper containing the alleged libel, the court characterized that conduct of the newspaper as merely ''passive,'' citing Seelman on the Law of Libel and Slander of New York, whose treatise, published in 1933, first proposed the test of the *conscious* intent of the defendant as determining whether an article is a republication or repetition of the defamatory material. He summarized the law on the subject, and proposed certain rules, as follows (chap. VI, par. 130, p. 120): ''The conflict in these cases [decisions which he had previously discussed] and the necessity of clear definition and simple practice lead to the following suggestion of what should constitute a separate publication and how suit should be brought therefor: First: The plaintiff should be required to unite in one complaint, all causes of action for all publications of all libels, published by the same defendant, prior to the commencement of the action, to the end that in one suit all damages to plaintiff's reputation shall be awarded. In such suit he should be allowed to prove all *subsequent* libels of the *same* or *similar* accusations up to the time of the trial. In this suit all republications may be considered by the jury on the question of malice, and a judgment should be a bar to all subsequent suits for any similar

publication up to the trial. · Second: The test of whether the article is a republication or a repetition should not depend on an interval of time, or a separate sale but upon the answer to the question. *Was the act of the defendant a conscious independent one?* The individual who sends the same letter to different persons at the same or another time, consciously and intentionally and independently does so. Each separate mailing is a separate *conscious* act. Each would then be provable as showing conscious intent. Whereas, in the case of a newspaper, as the circulation is considered one of the chief items of damage, and plaintiff recovers for all the distribution, no *conscious* intent arises until the defendant *consciously* as a second edition republishes the article. In each case it is the *conscious* act which determines. If these simple rules are followed, the plaintiff will be compelled, ·as he should, to litigate in one action all his claims for damage arising from all libelous publications of the defendant, up to and including the trial, (except libelous publications of a *different* character arising after the action has been commenced) ; and the question of malice or intent from repetition of the libel can be submitted to the jury, as it should be, upon the *conscious* act of republication by the defendant.'' It thus appears that the majority in the *Wolfson* case supported their conclusion and reasoning on the theory enunciated in Seelman that only where there is a new edition or reprinting of a certain issue of a newspaper or magazine the *conscious* intent of the defendant to republish the libel becomes effective.

In the dissenting opinion of the New York Court of Appeals, which plaintiff commends as better-reasoned logic, Mr. Justice Rippey argued that ''no 'conscious intent to induce' someone to read the libel need be shown since the publisher may be totally ignorant of the printed libel and still be responsible in damages for its publication,'' and he therefore concluded that

the "alleged 'passive' character of the act of the publisher is thus immaterial." He stated that the proximate cause of the injury to plaintiff did not occur at the time of the original publication, but argued that "when the publisher placed the printed libels on file it performed a new act entirely different in purpose, character and effect from the original act of printing and distribution; it then placed the libelous articles where they could be found and read and by invitation, in the eyes of the law, procured their reading with exactly the same effect as though the publisher had purposely and personally handed them to the reader and told him to read them." This act of the publisher, he said, is not a "gratuitous courtesy" but an open invitation to examine and read, since the exhibition of the libelous matter or its suppression was within the immediate control of the publisher. "The publisher has no social, moral or legal duty to the public or to a third person to maintain a reading room containing back files of its newspapers for public consumption or to keep its back files there or elsewhere where they may be examined and perused or to communicate defamatory matter. If it had, it might be absolved from blame if the libelous matter came into the hands of others than the one defamed. *Van Wyck v. Aspinwall,* 17 N. Y. 190; *Fowles v. Bowen,* 30 N. Y. 20; *Sunderlin v. Bradstreet,* 46 N. Y. 188, 193, 7 Am. Rep. 322; *Byam v. Collins* [111 N. Y. 143, 19 N. E. 75]. The rule, by necessity and on principle, is different where public libraries or repositories of reading matter innocently, ignorantly and in good faith receive and hold open for examination and perusal libelous matter published by others. [Citing cases.] . . . But, in the case of a circulating library which bought, sold or rented books as a business for private profit, the proprietors would be held responsible as publishers. [Citing cases.]"

One of the few exceptions to the current weight of authority is *Winrod v. McFadden Publications,* 62 F.

Supp. 249. In that case the copies upon which the suit was based had been mailed out to fill the orders of new subscribers, to replace lost or damaged copies or to fill back-number orders, as in the case at bar. JUDGE LA BUY followed the majority rule in holding that the original publication of the issue of August 8, 1942, in that case was completed by the composition, printing and distribution of that issue not later than July 29, 1942, but as to miscellaneous copies subsequently mailed or sold, which, as here, were only incidental to the main publication, he held that "plaintiff's cause of action must stand, and upon that question plaintiff is entitled to a trial herein."

The choice is thus cast between the reasoning of the dissenting opinion in *Wolfson v. Syracuse Newspapers, Inc.,* which was adopted by the district judge in *Winrod v. McFadden Publications,* and the vast majority of cases which hold that the release of miscellaneous copies incidental to the general publication either through the mail or on newsstands does not constitute a new publication or create a new cause of action. We prefer the reasoning of the majority decisions. The interval of time or a separate sale should not be the sole determining factor whether the article is a republication or a repetition of the defamatory material. Seelman's test of the *conscious* act appeals to us as more rational, and in the case of a newspaper or magazine "no *conscious* intent arises until the defendant *consciously* as a second edition republishes the article."

In the view we take the superior court properly dismissed the complaint on the ground that the cause of action was barred by the Illinois Statute of Limitations, and the judgment is therefore affirmed.

*Judgment affirmed.*

SCANLAN and SULLIVAN, JJ., concur.