Hazel A. WHEELER and Terry Ann Chenoweth, a minor, by Richard M. Hughey, her guardian, Plaintiffs-Appellants,

v.

DELL PUBLISHING CO., and Columbia Pictures Corporation, Defendants-Appellees.

No. 13463.

United States Court of Appeals Seventh Circuit.

March 12, 1962.

William G. Carr, Warren A. Heindl, Chicago, Ill., Margaret Heindl, Chicago, Ill., of counsel, for appellants.

Hamilton Smith, McDermott, Will & Emery, Chicago, Ill., of counsel, for appellee Dell Publishing Co., Inc.

Thomas J. Johnson, Jr., Edward J. Griffin, Marvin S. Helfand, Chicago, Ill.,

Defrees, Fiske, Thomson & Simmons, Chicago, Ill., of counsel, for appellee Columbia Pictures Corporation.

Before KNOCH, CASTLE, and KILEY, Circuit Judges.

KILEY, Circuit Judge.

This is a diversity suit for damages for libel and invasion of privacy, growing out of the novel and motion picture "Anatomy of a Murder." The trial court entered summary judgments for defendants, and plaintiffs have appealed.

Hazel Wheeler is the widow, and Terry Ann Chenoweth the daughter, of Maurice Chenoweth, who was shot and killed by a Lieutenant Peterson for the "rape" of Peterson's wife. Peterson was tried for murder at Marquette, Michigan in 1952. A jury acquitted him upon the defense of insanity.

The novel "Anatomy of a Murder", by Robert Traver, is the fictionalized version of the Chenoweth trial. It was originally published in June, 1957. Robert Traver is the nom de plume of John Voelker, who wrote the book when Associate Justice of the Supreme Court of Michigan. Voelker was Peterson's attorney at the Chenoweth trial.

In April, 1959, this best-seller was published as a "paperbound edition" by Dell Publishing Company. Later, Columbia Pictures Corporation made a motion picture based on the novel. In the novel and motion picture, Lieutenant Manion shoots and kills Barney Quill for the "rape" of Manion's wife, is tried for murder and acquitted on the ground of insanity.

Hazel Wheeler sued Dell for libel in Count I; and both she and Terry Ann Chenoweth sued Dell for invasion of privacy in Count III, and Columbia Pictures for libel in Count II and invasion of privacy in Count IV.

Hazel Wheeler alleges, in Count I against Dell, that she was defamed by being identified with the fictional Janice Quill, Barney's wife, described in the novel as using foul language and as having other "unsavory characteristics." She and her daughter Terry Ann allege, in Count II against Columbia, that the motion picture identifies Terry Ann with the fictional Mary Pilant, the illegitimate daughter of Barney Quill, and carries the imputation that Hazel Wheeler was the mother of a child born "out of wedlock." Both plaintiffs allege, against Dell and Columbia, in Counts III and IV respectively, that by virtue of the novel[1] and motion picture they have, without their consent, been subjected to unfavorable and unwanted publicity, and their privacy invaded, solely for the "monetary gain" of Dell and Columbia.

Dell moved to strike Counts I and III, on the ground, among others, that the novel was published in April, 1959, and that the Wheeler suit, not commenced until June 10, 1960, was therefore barred by the one year statute of limitations;[2] and that a joint cause of action on which no relief could be granted was stated in Count III. Columbia filed a similar motion. February 10, 1961, plaintiffs filed their "Second Amendment" to the complaint, which eliminated any basis for these motions, or for Columbia's renewed motion, except as to the statute of limitations.

The amendment enlarged Counts II and IV by allegations that the original showing of the motion picture was June 29, 1959 and was shown thereafter "to at least June 10, 1960." Columbia did not request a more particular statement of the general allegations, of the exhibitions of the motion picture, after June 29, 1959.

The first question is whether Hazel Wheeler's suits are barred by the statute of limitations.

---

1. Terry Ann is allegedly identified in the novel with Bernadine Quill, Barney's daughter.

2. Ill.Rev.Stat. ch. 83 § 14 (1961). This limitation period would not bar suit by Terry Ann, because, as a minor, she could bring suit within two years after reaching the age of eighteen years. Id. § 22.

■ Illinois law governs this diversity suit, Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); Crosby v. Time, Inc., 254 F.2d 927, 929 (7 Cir., 1958); and the single publication rule[3] had been adopted by Illinois courts when the causes of action arose.[4] Winrod v. Time, Inc., 334 Ill. App. 59, 78 N.E.2d 708 (1948); Winrod v. McFadden Pubs., 187 F.2d 180 (7 Cir.), cert. denied, 342 U.S. 814, 72 S.Ct. 28, 96 L.Ed. 616 (1951).

■ The single publication rule does not help Columbia, which claims its benefit. There was an issue of fact made by the affidavits with respect to the first exhibition of the motion picture. We presume that the district court properly took the date June 29, 1959, asserted by Hazel Wheeler, in entering summary judgment against her. If so, even under the single publication rule, her actions filed June 10, 1960 were not barred. We conclude her suits were not barred as to Columbia.

■ Dell also claims the benefit of the rule, and if it applies in the way it contends, the statute of limitations would run from April 7, 1959, the date of first publication, to bar the Wheeler suit against Dell. We think the rule does not apply to embrace in the April 7, 1959 printing the several reprintings by Dell thereafter. For that reason we conclude that Hazel Wheeler's cause is not barred as to the reprintings within one year next prior to June 10, 1960.

■■ There is no need to attempt to distinguish between a reprinting and an edition. The significant factor in deciding against Dell's contention is the repeating of the defamation. It makes little essential difference to a defamed person whether the material is a new paperbound edition of an original publication or a new printing of the paperbound, if the defamation is repeated. What matters is the new wound to reputation by the new defamation. A libel is a written slander. Just as each repetition of the slander is actionable, so saying it again in writing is actionable.

■ The reprintings were not "miscellaneous copies" of the original printing, but were the result of a "conscious act." Winrod v. Time, Inc., 334 Ill.App. 59, 78 N.E.2d 708 (1948). The "leading" case of Gregoire v. G. P. Putnam Sons, 298 N.Y. 119, 81 N.E.2d 45 (1948) is not controlling in Dell's favor. There, suit was based on a single copy of a book sold a year after first publication. A divided court dismissed the suit. The single book was part of the first printing and is well within the "miscellaneous copies" rule. Single books and miscellaneous copies are part of the original publication. There is no new conscious act. They are like echoes of spoken defamation.

The next question is whether the court erred in entering the summary judgments.

The libel suit against Dell is based on allegations that Hazel Wheeler has been defamed because in the locale, trial, and characters presented in "Anatomy of a Murder" she is identified with the fictional Janice Quill.

"Anatomy of a Murder" is a study through fiction of an actual murder trial. The fictional locale is fairly identifiable with the actual. The Peterson trial was in Marquette, in the Upper Peninsula of Michigan. The fictional trial is in Iron Bay, in the Upper Peninsula. Certainly those who knew of the Peterson trial would identify it with the fictional trial of Lieutenant Manion. Admittedly Barney Quill represents Maurice Chenoweth. And those who knew John Voelker as defense attorney for Peterson would iden-

---

3. Under this rule "all of the copies of a printed publication constitute a single publication occurring on first delivery or distribution to the public." Ogden v. Ass'n of U. S. Army, 177 F.Supp. 498, 500 (D.D.C.1959). See also Prosser, Torts, 599, 600 (2d ed. 1955).

4. The Illinois Legislature adopted the Uniform Single Publication Act in 1959, after the causes arose. See Ill.Rev.Stat. ch. 126 §§ 11–15 (1961).

tify Paul Biegler, the fictional defense attorney, with Voelker.

■ But none who knew Hazel Wheeler could reasonably identify her with Janice Quill, "that dame with the dyed red hair and livid scar on her right cheek who had sworn at him in everything but Arabian * * *. Who'd ever forget such a noisy foul-mouthed harridan? * * *" Hazel Wheeler's counter-affidavit, in opposition to Dell's motion for summary judgment, states that she had scratched her face and had used a "henna rinse" during the time of the trial. Even so, those who knew she was Chenoweth's widow and mother of Terry Ann could not reasonably identify her with Janice Quill, for Hazel Wheeler denies having any of the "unsavory characteristics" of Janice Quill.

Hazel Wheeler's situation is not like that of Princess Youssoupoff in Youssoupoff v. M.G.M., 50 Times L.R. 581, 99 A.L.R. 864 (1934), on which she relies. In that motion picture, "Rasputin, the Mad Monk," the plaintiff princess is clearly identifiable as Princess Natasha seduced by Rasputin. Hazel Wheeler's situation is more like that of Mrs. Levey, divorced wife of George M. Cohan, in Levey v. Warner Bros. Pictures, 57 F. Supp. 40 (S.D.N.Y.1944). Mrs. Levey claimed that she was reasonably identifiable as the fictional Mary played by actress Joan Leslie in the motion picture "Yankee Doodle Dandy." The court said Mrs. Levey's divorce was not shown in the motion picture and Mary was portrayed as Cohan's only wife, and " * * * it can not be said that plaintiff is portrayed * * *." Hazel Wheeler was not divorced from Maurice Chenoweth, but Janice Quill was divorced from Barney Quill.

In our opinion, any reasonable person who read the book and was in a position to identify Hazel Wheeler with Janice Quill would more likely conclude that the author created the latter in an ugly way so that none would identify her with Hazel Wheeler. It is important to note that while the trial and locale might suggest Hazel Wheeler to those who knew the Chenoweth family, suggestion is not identification. In Levey the court said those who had seen her act may have been reminded of her by songs and scenes, but would not reasonably identify her.

The court in the Levey case stated that Mary played an "inconspicuous part" in "Yankee Doodle Dandy." That points up another similarity between the Levey case and the case at bar. Janice Quill plays an "inconspicuous part" in the novel "Anatomy of a Murder." No average reader of the book would remember the very minor sub-plot, in which Janice Quill had a place.

■ Bernadine Quill, Barney's daughter, also plays an "inconspicuous part" in the novel. She is sixteen at the time of the fictional trial; Terry Ann Chenoweth was nine at the time of the actual Peterson trial. This age differential and the inconspicuous role of Bernadine Quill impel us to conclude that no cause of action was stated as to Terry Ann Chenoweth.

We think the court did not err in entering summary judgment for Dell on Count I. It follows that Count III, the privacy count, must fall. If plaintiffs are not identifiable as Janice and Bernadine Quill, the privacy of neither has been invaded by Dell.

We reach the same conclusion with respect to the suits against Columbia.

■ In the motion picture, the character Mary Pilant, the illegitimate daughter of Barney Quill, is the child of Simone Pilant, a waitress, and was born in Canada. Simone Pilant is not a character in the motion picture. Mary Pilant is portrayed in the role of "romantic lead" and a witness at the fictional murder trial. No reasonable person knowing Terry Ann Chenoweth, nine years old at the time of the actual Peterson trial, would reasonably identify her with Mary Pilant. It follows they would not impute to Hazel Wheeler the motherhood of an illegitimate child.

Because we decide the complaints do not state causes of action, we need not decide whether they are deficient in not pleading special damages.

For the reasons given, the judgments are affirmed.