## Dominiak et al., Appellants, *v.* National Enquirer.

Argued November 14, 1969. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

Michael J. Pepe, Jr., for appellant.

Wilbur H. Haines, Jr., with him Frederick M. Lowther, James T. Giles, and Pepper, Hamilton & Scheetz, for appellees.

OPINION BY MR. JUSTICE COHEN, July 2, 1970:

This appeal involves the application of Pennsylvania's one year statute of limitations for libel, Act of March 27, 1713, 1 Sm. L. 76, §1, 12 P.S. §31; Act of April 25, 1850, P. L. 569, §35, 12 P.S. §32, to the Uniform Single Publication Act, Act of August 21, 1953, P. L. 1242, §1 et seq., 12 P.S. §2090.1 et seq.[1]

John Dominiak, a minor, by his guardian, filed suit against National Enquirer, Best Medium Publishing Co., Inc. and United News Company on March 15, 1965 alleging that the National Enquirer issue dated March 29, 1964 contained material defamatory to him. Appellees, Best Medium Publishing Co. and National Enquirer, moved for summary judgment on the ground that the cause of action was barred by the statute of limitations, and this motion was granted by the court below.

---

[1] This Court discussed the Uniform Single Publication Act in *Gaetano v. Sharon Herald Company*, 426 Pa. 179, 231 A. 2d 753 (1967), but in that case the question centered on the proper venue for the action.

The relevant facts are as follows: Printing of the issue of the National Enquirer dated Sunday, March 29, 1964, commenced in Tenafly, New Jersey on Tuesday, March 10, 1964. Beginning on March 10, copies were transported by Best from the printing plant to New York City railroad terminals and other terminals for shipment to wholesalers throughout the country. Copies were distributed to employees of these terminals on March 10. On Thursday, March 12, copies were delivered by Best to approximately 4,000 newsstands and other retail dealers throughout the New York City metropolitan area, on which date approximately 200,-000 copies were placed on public sale. On Friday, March 13, copies were placed on sale at newsstands, and on the same date subscription copies were mailed to subscribers from the General Post Office in New York City. Beginning on Saturday, March 14, copies were placed on sale at newsstands in Philadelphia. The issue remained on sale at newsstands for one week when unsold copies were removed and replaced by copies of the next issue.

The court below held that "[t]he important date in this case as appears from the uncontradicted evidence on the record is March 14, 1964, which is the date on which the publication appeared for the first time in Philadelphia. Since suit was started on March 15, 1965, there can be no question but that it is barred by the Statute of Limitations." As appellees concede, if March 14, 1964, is the date on which the one year period commenced, the conclusion of the court below is incorrect in light of Section 38 of the Pennsylvania Statutory Construction Act, Act of May 28, 1937, P. L. 1019, 46 P.S. §538, and Pa. R. C. P. 106. They would permit the filing of the action on March 15, 1965, as March 14, 1965 was a Sunday.

It is appellees' position, however, that the crucial date is not March 14, 1964, but rather March 10, with

the commencement of delivery of copies to common carriers for shipment and distribution to terminal employees, *Hartmann v. Time, Inc.,* 166 F. 2d 127 (3d Cir. 1947), *Backus v. Look, Inc.,* 39 F. Supp. 662 (S.D. N.Y. 1941), *National Cancer Hospital of America v. Confidential, Inc.,* 151 N.Y.S. 2d 443 (Sup. Ct. 1956), or at the latest March 12, when 200,000 copies were placed on sale to the public in the New York metropolitan area, *Zuck v. Interstate Publishing Corp.,* 317 F. 2d 727 (2d Cir. 1963), *Gregoire v. G. P. Putnam's Sons,* 298 N.Y. 119, 81 N.E. 2d 45 (1948), *Polchlopek v. American News Co.,* 73 F. Supp. 309 (D. Mass. 1947).

In analyzing this position, it is necessary to examine the conditions that led to the passage of the Uniform Single Publication Act, supra. Traditionally, the common law held that each communication of a defamatory statement created a separate cause of action. *Duke of Brunswick v. Harmer,* 14 Q.B. 185, 117 Eng. Rep. 75 (1849). With the development of mass media as it is known today, such a rule became anachronistic because it created the possibility that a single defamatory statement would give rise to millions of causes of action. "From the sheer necessity thus created, and from a recognition that mass communication of a single defamatory communication, for practical purposes, constitutes a single wrong, the courts have developed a theory of a 'single publication' as one composite tort which embraces all the acts involved in the printing and distribution of a newspaper or magazine to its millions of readers in many jurisdictions." 1 Harper and James, The Law of Torts, §5.16 at 394-395. In many states the single publication rule has been adopted as part of the common law. *Wolfson v. Syracuse Newspapers, Inc.,* 254 App. Div. 211, 4 N.Y.S. 2d 640 (1938), aff'd 279 N.Y. 716, 18 N.E. 2d 676 (1939);

Restatement 2d, Torts, Tentative Draft No. 12, §577A (1966). In Pennsylvania and six other states the principle has been adopted by the legislature.

The section of the statute applicable to this appeal is Section 1, 12 P.S. §2090.1, which states in pertinent part: "No person shall have more than one cause of action for damages for libel . . . or any other tort founded upon any single publication . . . such as any one edition of a newspaper. . . . Recovery in any action shall include all damages for any such tort suffered by the plaintiff in all jurisdictions." It is the position of appellees that "the single publication rule centers on the principles that a single issue of a magazine or newspaper, although that issue consists of thousands of copies widely distributed, is in legal effect one publication which gives rise to but one cause of action for libel, and that the single cause of action accrues at the time of first publication." Therefore, their argument is directed to the problem of what day was the day of first publication for purposes of the statute, for it is their contention that it is on that day that the one year period commenced.

It is true, as appellees contend, that a number of cases hold that the Statute of Limitations begins to run as to the single cause of action on the date of initial publication. *Buckley v. New York Post Corporation,* 373 F. 2d 175 (1967) ; *Zuck v. Interstate Publishing Corp.,* supra; *Hartmann v. Time,* supra; *Kilian v. Stackpole Sons, Inc.,* 98 F. Supp. 500 (M.D. Pa. 1951). All of those cases, however, were interpreting the common law, and there is only one case, *Belli v. Roberts Brothers Furs,* 240 C.A. 2d 284, 49 Cal. Rptr. 625 (App. 1966), which has given this interpretation to the Uniform Single Publication Act.

We find that neither the wording of the statute nor the policy behind it requires a holding that the period

of limitations begins to run from the time of the first publication. It is clear that the statute was designed to offer protection to the defendant from countless suits, an almost endless tolling of the statute of limitations and diversity in applicable substantive law (although the choice of law problems in this area have scarcely been settled). That purpose can be effectuated by holding that the plaintiff may choose any publication as the single publication which represents his single cause of action. This does not mean that he may recover damages for all publications; to hold that would defeat the statute's purpose to prevent endless tolling of the statute of limitations. He may only recover damages that result from publications occurring within one year (assuming that is the applicable limitations period) of the date he chooses. An example might be helpful. Assume publications of a defamatory article were made in New York beginning on January 1, in Pennsylvania beginning on February 1, and in New Jersey on March 1 (all in year 1). Assume then the plaintiff brought suit in Pennsylvania on February 15 of Year 2. Under appellees' theory, his whole suit would be barred. (It does not matter which state's statute of limitations is applied as each is one year. N.J.S.A. 2A:14-3; N.Y. Civil Practice Act, §51-a). Under our interpretation of the statute, the plaintiff would not be able to recover for any damages suffered in New York as a result of publications there prior to February 15 of Year 1, because the one year period had expired. He would be able to recover for damages suffered as a result of publications in New Jersey because that one year period had not expired. As to damages suffered in Pennsylvania, he would be able to recover for those suffered as a result of publications after February 15 of Year 1 but not those suffered as a result of publications before. The nature of the defama-

tory publication might be helpful in this difficult job of assessing damages. For example, the damage done by an article in a daily newspaper would probably be greatest in the day or two following initial publication, while that done by a book might be constant over a long period or even increase over time if the defamatory matter created constantly increasing public interest and sales.

The problem with the theory presented by the appellees is the potential for abuse it creates. An unscrupulous publisher might print a defamatory article about a Californian and distribute a few copies in New York; the plaintiff might well feel that the time and expense involved did not warrant the filing of an action; then after the one year period was over (assuming California has a one year period also) the publisher could flood California and the rest of the country with the article and, under appellees' theory, face no threat of liability. See *Winrod v. McFadden Publications,* 62 F. Supp. 249, 251 (N.D. Ill. 1945); *Hartmann v. American News Co.,* 69 F. Supp. 736, 738-39 (W.D. Wis. 1947); Note, The Single Publication Rule in Libel: A Fiction Misapplied, 62 Harv. L. Rev. 1041, 1043-44 (1949). The interpretation we are giving the statute, as far as policy considerations are concerned, properly balances the interests of the plaintiff and defendant and eliminates the possibility of such abuse.

The wording of the statute permits such an interpretation, Section 1, 12 P.S. §2090.1, states "No person shall have more than one cause of action for damages for libel . . . or any other tort founded upon *any single publication* . . . ." (Emphasis supplied). A defamed person has many causes of action; the statute merely says he has one cause of action for damages. Nowhere does it state that that cause of action for damages (and the Statute of Limitations) must run from the time of the initial publication.

The purpose of the statute was to give a certain measure of protection to the defendant. Our construction of it does that and at the same time gives a certain flexibility to the plaintiff. It places the interests of the parties in proper balance.

As appellant filed suit on March 15, 1965, he is entitled (assuming the article was defamatory) to prove the damages he suffered as a result of publications after March 15, 1964.

The order of the court below is reversed.

---

CONCURRING OPINION BY MR. JUSTICE ROBERTS:

We are here concerned with the interplay between two rules of law applicable in defamation cases: the one year statute of limitations, meant to guard against the presentation of stale claims; and the single publication rule, meant to prevent a multiplicity of suits. Sound reasons of public policy support them both. Yet, if construed in too literal a fashion, the combined effect of these rules can yield a result which is unduly harsh and unsupported by any rational policy considerations.

In the instant case we must decide when the statute of limitations began to run. I quite agree with the majority that neither the wording nor the policy behind either rule "requires a holding that the period of limitations begins to run from the time of the first publication." However, I do not believe it wise to permit a defamation plaintiff to choose *any* sale or publication as the one which represents his single cause of action. The dissemination of any one given publication can cover a period of several months or perhaps years; to permit a suit to be based on any one of the many "publications" which can occur during the course of such distribution would defeat the salutary purposes of the one year statute of limitations and the single publication rule.

I would hold that the statute begins to run, at the earliest, from the time a publication first reaches the allegedly defamed individual's community. A distribution which is too small or too far removed from the defamed individual's community—the size of which would vary with the scope of his public stature—to be truly damaging should hardly be permitted to trigger the statute of limitations.

Applying such a standard to the instant case I believe that the statute of limitations began to run no earlier than March 14, 1964, the date of the first major distribution in Philadelphia.* The prior publication in New York, though quantitatively significant, was just not sufficiently extensive vis a vis the appellant to trigger the statute of limitations. Appellant was not a national figure, and the defamation could only really begin when the material was communicated to his community. Since March 14, 1965, was a Sunday, I believe that the suit was timely filed and concur in the result.

---

CONCURRING OPINION BY MR. JUSTICE POMEROY:

The single publication rule developed at common law and adopted by statute in this Commonwealth limits a plaintiff to a single cause of action for damages resulting from the publication of defamatory material. The problem in this case is one of determining for the purposes of the statute of limitations which act of publication is to be the "single publication" upon which the cause of action arises. I agree with the majority opinion that there is nothing in the Uniform Single Publication Act which states that the period of

---

* In a dated publication the date assigned by the publisher might well control the running of the statute, especially where that date might have misled the plaintiff into believing that the statutory period had not yet run.

limitation begins to run on the date of first publication. That act does not speak at all to the limitations problem. It merely provides that "No person shall have more than one cause of action for damages for libel . . . Recovery in any action shall include all damages for any such tort suffered by the plaintiff in all jurisdictions." Act of August 21, 1953, P. L. 1242, §1, 12 P.S. §2090.1. Nor is there a sufficient body of decisional law interpreting the Act to dictate, in the interest of achieving uniformity, any particular answer to the question before the Court.

It is my view that the first publication of the alleged defamation *in the state in which suit is brought* should be taken as the single publication and so mark the date from which the statute runs. Such a rule would, I believe, provide the plaintiff with adequate flexibility; the action being transitory, the jurisdiction sued in would be a matter of plaintiff's choice, reflecting his calculation of the convenience of the forum, the extent of the damages,[1] and the substantive law under which the case would be tried. It would also protect a defamed person against the impossibility of recovering damages for an extensive libelous publication which reaches into his hometown, the statutory period for suit having previously run by virtue of a prior publication so limited in scope or so far removed from his domicile that the publication was unknown to the defamed person or would not have justified suit even had it been known.

Such a rule would equally serve the defendant's legitimate interest in certainty, an interest which is reflected in Pennsylvania's one-year statute of limita-

---

[1] Under the rule here suggested, the damages suffered in all jurisdictions would necessarily have to be computed from the date of "single publication," i.e., the date of first publication in the jurisdiction of suit.

tions, now 257 years old. At the same time, it would preserve the normal nexus between a Pennsylvania cause of action and the Pennsylvania statute of limitations.[2] From the point of view of judicial administration, moreover, it would seem that such a rule would be easily comprehended and applied; the considerable problems in the area of multi-state defamation litigation underscore the need for such clarity. While I appreciate the careful balancing of interests which the majority opinion attempts, I doubt that the various interests involved in this or any similar case are adequately reconciled by a rule which would allow a plaintiff to choose any single act of publication—no matter how remote in place or in time from the first publication—as the date from which the statute is to run. Neither do I think the cause of relative certainty is advanced by a rule, such as that proposed by Justice ROBERTS, which focuses on such necessarily vague concepts as the plaintiff's "stature", or "community", or a "major distribution".

If the rule as here suggested be applied to the facts of this case, there is no difficulty in concluding that the first act of publication in this state occurred on March 14, 1964. The parties do not disagree that this was the date upon which the alleged defamatory ma-

---

[2] The rule here advocated would not cover the unlikely situation of a suit in Pennsylvania with respect to a libel which had never been published in Pennsylvania. In such a case, the Pennsylvania courts, applying the normal principles of conflict of laws, would have to look to the law of the place where the publication declared upon occurred to determine if it is a "single publication" state, either by common law or statute, and then apply the law of that jurisdiction as to whether the asserted cause of action is based on the correct publication. The statute of limitations to be applied in such a case would be that of the forum state, viz., Pennsylvania, subject of course to the possible application of the Pennsylvania "borrowing" statute, Act of June 26, 1895, P. L. 375, §1, 12 P.S. §39.

terial was first placed on sale at newsstands in Philadelphia. This constituted an intentional communication to one other than the person defamed (see *Restatement of Torts,* §577; *Gaetano v. Sharon Herald Co.,* 426 Pa. 179, 182, 231 A. 2d 753 (1967)), and there is no need here to consider the refinements of "publication" which are ably briefed by the parties. March 14, 1965 having been a Sunday, the filing of this action on March 15, 1965 was within the statute. Accordingly, I concur in the decision of the Court.

Mr. Justice JONES joins in this concurring opinion.