Elizabeth Norris ANDREWS

v.

TIME, INC., d/b/a People Weekly, Leonard E.B. Andrews, Donald M. Elliman, Jr., Henry Anatole Grunwald, and Susan Reed.

Civ. A. No. 87–5974.

United States District Court, E. D. Pennsylvania.

June 8, 1988.

William C. Massinger, West Chester, Pa., for plaintiff.

Charles J. Bloom, Philadelphia, Pa., for Time, Inc., d/b/a People Weekly, Donald M. Elliman, Jr., Henry Anatole Grunwald, and Susan Reed.

William Roberts, Philadelphia, Pa., for Leonard E.B. Andrews.

MEMORANDUM AND ORDER

BECHTLE, District Judge.

Presently before the court are the following motions: (1) "Plaintiff's Motion for Relief from Order Dismissing Plaintiff's Complaint With Prejudice;" (2) "Plaintiff's Motion for Extension of Time to Comply with Pretrial Memorandum Order;" and, (3) "Defendant Leonard E.B. Andrews' Motion to Dismiss Plaintiff's Complaint, or in the Alternative for Summary Judgment." For the reasons stated herein, plaintiff's two motions will be denied and defendant Leonard E.B. Andrews' motion will be granted.

I. BACKGROUND

Plaintiff commenced this defamation action in the Court of Common Pleas of Delaware County, Pennsylvania, on August 24, 1987, and on September 23, 1987, Time Inc.,

Henry Anatole Grunwald, Donald M. Elliman, Jr., and Susan Reed (hereinafter collectively referred to as "the Time defendants") removed the action to this court based on diversity of citizenship and the requisite amount in controversy.

The Complaint is based upon the publication of an allegedly defamatory article in *PEOPLE Weekly Magazine* ("PEOPLE") which is published by defendant Time, Inc. The PEOPLE issue dated August 25, 1986, contained an article entitled "Leonard Andrews Unveils 240 of Andrew Wyeth's Best–Kept Secrets: The Helga Paintings," authored by defendant Susan Reed who is a writer and Associate Editor of PEOPLE. Defendant Donald M. Elliman, Jr. is the publisher of PEOPLE. Defendant Henry Anatole Grunwald is the Editor-in-Chief of PEOPLE.

On September 29, 1987, the Time defendants filed a motion to dismiss or in the alternative for summary judgment based on Pennsylvania's one year statute of limitations on defamation actions. Plaintiff *never* answered the motion to dismiss or the alternative motion for summary judgment. On January 8, 1988, over three months after the Time defendants filed their motion to dismiss, the court entered an Order dated January 7, 1988, which granted the Time defendants' unanswered motion to dismiss.

On January 21, 1988, plaintiff filed the instant Fed.R.Civ.P. 60(b) motion for relief from the court's January 8, 1988 Order which dismissed, with prejudice, plaintiff's Complaint against the Time defendants. The Time defendants timely filed their reply, pursuant to a stipulation extending its time to file, to plaintiff's Rule 60(b) motion on February 9, 1988. A hearing on, *inter alia,* the Rule 60(b) motion was held on May 6, 1988.

## II. DISCUSSION

### A. *Fed.R.Civ.P. 60(b) Inadvertence and Excusable Neglect*

Fed.R.Civ.P. 60(b) provides in pertinent part:

(b) *Mistake; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc.*

On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons:

(1) *mistake, inadvertence, surprise, or excusable neglect;*

. . .

or (6) *any other reason justifying relief from the operation of the judgment.*
(Emphasis added).

At the outset the court distinguishes plaintiff's situation from the circumstance where a Rule 60(b) motion is made by a defendant for relief from default judgment entered against a defendant not because of any fault of the defendant but solely due to the defense attorney's own negligence. In that type of attorney-caused-default circumstance, the attorney's negligence would be more likely to qualify as excusable neglect. Here, however, the court is faced not with a default judgment against a defendant but with an unanswered motion to dismiss that was granted against the party who initiated the lawsuit.

Plaintiff seeks relief from the final judgment due to her counsel's alleged inadvertence and alleged excusable neglect. Plaintiff offers the following as inadvertence and/or excusable neglect: (1) "[p]laintiff's counsel was mistaken in believing that the statute of limitations defense had to be pleaded in an answer under Rule 8(c) along with any other affirmative defenses claimed by defendants;" (2) "[p]laintiff's counsel was further under the mistaken impression that notice of a hearing on defendants' motion would be fixed by the Court before the need for plaintiff to file a responsive pleading thereto;" and, (3) "[p]laintiff's counsel fully intended to respond to defendants' motion, but because of inadvertence and engagement in a criminal jury trial in Chester County, neglected to do so." Plaintiff's Fed.R.Civ.P. 60(b) motion. At the outset the court notes that plaintiff's first excuse seems to be inconsistent with her second and third excuses

and therefore the plausibility of these excuses is in issue. In one motion plaintiff's counsel states that (1) he did not think he had to respond; (2) he thought he would be told when to respond; (3) he wanted and intended to respond but was too busy to respond; and, (4) he inadvertently did not respond.

■ As to the first two excuses proffered by the plaintiff, the court points out the following. Ignorance of the law or the Federal Rules of Civil Procedure is not sufficient to justify setting aside a judgment, particularly where the attorney's ignorance amounts to negligence. *See Ben Sager Chemicals Int'l v. E. Targosz & Co.*, 560 F.2d 805, 809 (7th Cir.1977) ("Neither ignorance nor carelessness on the part of a litigant or his attorney provide grounds for relief under Rule 60(b)(1)"). *See also, United States v. Erdoss*, 440 F.2d 1221, 1223 (2d Cir.1971) ("ignorance of the law is not the sort of 'excusable neglect' contemplated by Federal Civil Rule 60(b) as ground for vacating an adverse judgment"); *Railroad Maintenance Laborers' Local 1274 v. American R.R. Constr. Co.*, 96 F.R.D. 433, 436 (N.D.Ill.1983).

Another reason why plaintiff's second excuse is unacceptable and does not rise to the level required to warrant the granting of a Rule 60(b) motion is as follows.

■ At the hearing held on May 6, 1988, and in plaintiff's Fed.R.Civ.P. 60(b) motion, plaintiff's counsel stated, *inter alia*, that he was under the "impression that notice of a hearing on defendants' motion would be fixed by the Court before the need for plaintiff to file a responsive pleading thereto." Plaintiff's counsel's impression or assumption was flat out wrong. No hearing was necessary since the motion to dismiss under Fed.R.Civ.P. 12(b)(6) was unanswered and therefore unopposed. It was for that reason the court, on January 8, 1988, entered an Order dated January 7, 1988, which granted the unopposed motion to dismiss and dismissed plaintiff's complaint with prejudice against the moving defendants.

Since the court did not have to consider any affidavits in ruling upon the unopposed Fed.R.Civ.P. 12(b)(6) motion and therefore excluded them, that motion did not have to be treated as one for summary judgment.

Even if the court had not excluded the matters outside the pleading that were presented to the court along with defendants' Fed.R.Civ.P. 12(b)(6) motion, and the motion would therefore have to be treated as one for summary judgment and disposed of as provided in Fed.R.Civ.P. 56, an oral hearing would not be required. *See* 10A Wright and Miller, *Federal Practice and Procedure* § 2720.1.

Although Fed.R.Civ.P. 56(c) refers to a hearing and thus an attorney's mistaken belief that, although not requested, a hearing would be scheduled and held before summary judgment could be entered against his client would be somewhat understandable, that attorney's failure to file any type of answer or reply to the summary judgment motion would be inexcusable if it was due solely to a belief that a hearing would be held.

All motions must be answered in writing, if they are to be answered, within the time allotted by the rules. *See* Local R.Civ.P. 20(c). Just because an attorney believes, although mistakenly, that an oral hearing on a motion will be scheduled does not excuse that attorney from filing an answer to that motion or toll the time in which the rules allow for an answer to be filed.

In the instant action, plaintiff claims that "[p]laintiff's counsel was further under the mistaken impression that notice of a hearing on defendants' motion would be fixed by the Court before the need for plaintiff to file a responsive pleading thereto." Whether there was a "need" for plaintiff to file an answer to defendants' motion or not is up to plaintiff and her counsel, but the time to make such a filing is in no way affected by the court's decision as to whether to hold a hearing and if so, when to notice that hearing. If that was truly plaintiff's counsel's belief, it is without any good faith basis and failure to file an answer for that reason does not quality under Fed.R.Civ.P. 60(b) as inadvertence or excusable neglect. The record demonstrates

plaintiff's counsel's knowledge that a motion or reply to a motion can be filed and supplementing affidavits can be filed later. For example, plaintiff's counsel supplemented plaintiff's Rule 60(b) motion with two affidavits just before the oral argument on plaintiff's Rule 60(b) motion.

■ The third excuse proffered by plaintiff for failing to respond to the motion (that plaintiff's counsel's engagement in a criminal jury trial in Chester County and inadvertence was responsible) is also unacceptable and lends no support to plaintiff's Rule 60(b) motion. An attorney's excessive caseload or engagement elsewhere does not constitute the kind of "excusable neglect" contemplated by Rule 60(b). *See, e.g., Greene v. Pyatt*, 78 F.R.D. 362 (E.D.N.Y. 1978) (holding that counsel's engagement in a murder trial failed to show excusable neglect for counsel's failure to file a motion to vacate a default judgment); *Vega Matta v. Alvarez de Choudens*, 440 F.Supp. 246 (D.P.R.1977) (holding that a heavy load of cases does not constitute excusable neglect).

Even if plaintiff could demonstrate excusable neglect, which she cannot, she must assert a defense on the merits against the Time defendants' motion to dismiss or for summary judgment in order to prevail on her Fed.R.Civ.P. 60(b) motion. *Reid v. Liberty Consumer Discount Co. of Pa.*, 484 F.Supp. 435 (E.D.Pa.1980). Plaintiff must demonstrate that had she answered the Time defendants' motion to dismiss or in the alternative for summary judgment, that motion would have been denied on the merits. To do so, plaintiff has attached to her Rule 60(b) motion a memorandum of law which argues that plaintiff's libel complaint is not time barred.

## B.  *Statute of Limitations*

The applicable statute of limitations in Pennsylvania, whose law applies, provides in pertinent part:

> The following actions and proceedings must be commenced within one year: (1) An action for libel, slander or invasion of privacy.

42 Pa.C.S.A. § 5523 (1982).

A plaintiff must bring the action within one year "from the time the cause of action accrued . . ." 42 Pa.C.S.A. § 5502(a). Thus, in order to determine whether the plaintiff's action, filed August 24, 1987, is barred by the one year limitations period, one must determine when the alleged cause of action for libel "accrued."

Pennsylvania has adopted the Uniform Single Publication Act, 42 Pa.C.S.A. § 8341, which establishes that the publication of one article shall give rise to only *one* cause of action for defamation. It provides that:

> No person shall have more than one cause of action for damages for libel or slander or invasion of privacy, or any other tort founded upon any single publication, or exhibition, or utterance, such as any one edition of a newspaper, or book, or magazine, or any one presentation to an audience, or any one broadcast over radio or television, or any one exhibition of a motion picture.

42 Pa.C.S.A. § 8341(b). This statute replaced the common law rule which provided that each separate communication—*i.e.,* each separate copy of an allegedly defaming magazine—gave rise to a separate cause of action.

In *Dominiak v. National Enquirer*, 439 Pa. 222, 266 A.2d 626 (1970), the Pennsylvania Supreme Court ("supreme court") rejected defendant's contention that the Single Publication Act required that the period of limitations be calculated from the date of first nationwide publication, and instead allowed the plaintiff to calculate the one year period from the date of first statewide publication. *Id.* at 226, 266 A.2d 626. The publication involved in *Dominiak* was just like the publication involved in this action in that it was a weekly publication which was distributed by sending it to subscribers and selling it at newsstands. In both cases the issues remained on sale at newsstands for one week when unsold copies were removed and replaced by copies of the next issue. In *Dominiak,* the defendant initial-

ly distributed the allegedly libelous issue of the *National Enquirer* in New York, and several days later placed additional copies on sale on newsstands in Philadelphia, Pennsylvania, the plaintiff's hometown and state. *Id.* at 224, 266 A.2d 626. The trial court calculated the limitations period, using the date of the first national publication, concluded that the statute of limitations had run, and accordingly granted summary judgment for the defendant. The supreme court reversed, expressing its concern of the potential for abuse that calculation from the first *national* publication date would present. That court gave the following example of how that abuse might occur:

> An unscrupulous publisher might print a defamatory article about a Californian and distribute a few copies in New York; the plaintiff might well feel that the time and expense involved did not warrant the filing of an action; then after the one year period was over ... the publisher could flood California and the rest of the country with the article, and ... face no threat of liability.

Thus *Dominiak* stands for the proposition that the date of first *statewide* publication, rather than of first nationwide publication, should trigger the statute of limitations. *Sheeran v. Brill,* No. 80–4574, slip op. at 3 (E.D.Pa. filed April 28, 1981) (unpublished opinion), *aff'd,* 673 F.2d 1302 (3d Cir. December 4, 1981) (unpublished opinion).

More recently in *Graham v. Today's Spirit,* 503 Pa. 52, 468 A.2d 454 (1983), the Supreme Court of Pennsylvania addressed the issue of when such a cause of action accrues and when the statute therefore begins to run. In *Graham* the supreme court stated that "it is the original printing of the defamatory material and not the circulation of it which results in a cause of action." *Id.* Although that court used the terms "original publication" and "original printing" interchangeably, *id.,* it is clear that the more accurate term to use is original *publication.* Thus, the critical task is to determine when the original publication of the allegedly defamatory article occurred. Depending upon the facts of each case, it might have occurred on one given day or it might have occurred over the course of a few days and been completed on the last of those days.

Although dicta in *Dominiak, supra,* 266 A.2d at 269, seemed to imply that a plaintiff may choose any publication as the single publication which represents her single cause of action, the more recent supreme court holding in *Graham, supra,* 468 A.2d at 457, makes it clear that a plaintiff may not just choose any publication of the allegedly defamatory material to start the running of the statute of limitations.

Similarly, the approach in most jurisdictions is to determine a single, fixed date of publication, rather than to let the plaintiff choose any publication date. *See, e.g., Fleury v. Harper & Row Publishers, Inc.,* 698 F.2d 1022, 1027 (9th Cir.), *cert. denied,* 464 U.S. 846, 104 S.Ct. 149, 78 L.Ed.2d 139 (1983) (holding that "in the case of a single, integrated publication, [the cause of action] accrues on the first general distribution of the publication to the public"); *Wildmon v. Hustler Magazine, Inc.,* 508 F.Supp. 87, 91 (N.D.Miss.1980) (statute of limitations begins to run for mass-distributed monthly periodical on a single date "when the periodical is substantially distributed to the public"); *Khaury v. Playboy Publications, Inc.,* 430 F.Supp. 1342, 1344 (S.D.N.Y.1977) (statute begins to run on date when substantially all of that months issues were distributed to the public); *Holloway v. Butler,* 662 S.W.2d 688, 692 (Tex.Civ.App. 1983) ("publication is complete on the last day of the mass distribution of copies of the printed matter"); *Ault v. Hustler Magazine, Inc.,* 13 Media L.Rptr. 1657, 1660 (D.Ore.1986) (statute starts to run on date of "first publication"—day monthly magazines placed on newsstands); *Goodlett v. New York Magazine,* 11 Media L.Rptr. 2138, 2139 (Cal.App.1985) (statute runs from date of first general distribution of the publication to the public).

■ Turning to the facts of the instant action, the allegedly defamatory article appeared in the issue of PEOPLE with the cover date of August 25, 1986. That cover date does not establish the actual date of

publication. *See Morrissey v. William Morrow & Co.*, 739 F.2d 962, 967 (4th Cir. 1984), *cert. denied*, 469 U.S. 1216, 105 S.Ct. 1194, 84 L.Ed.2d 340 (1985); *Khaury v. Playboy Publications*, 430 F.Supp. 1342 (S.D.N.Y.1977). According to the affidavits submitted by the Time defendants, approximately 3,025,162 copies of the issue of PEOPLE cover dated August 25, 1986, were sold in the United States. Of those, 1,287,890 were subscription copies; approximately 1,737,272 were newsstand copies. On August 14, 1986, the magazine came off the printing presses and it entered the distribution process, was shipped to newsstands and was delivered to post offices on August 14–15, 1986. Subscribers in the Newtown Square, Pennsylvania area, where plaintiff resides, received their issues of the magazine on August 16 and 18, 1986. Nationwide the latest date that any subscribers received their copies was August 22, 1986. The Time defendants' memorandum in support of motion for summary judgment ("Time's Mem.") at 3; Affidavit of Mary N. Davis. According to the statistics that relate to the Lancaster, Pennsylvania printing plant (which serves plaintiff's area) contained in Time, Inc.'s "Weekly Delivery Report for Weekly Magazines," which is a summary of data from Time, Inc.'s national reporting staff of 650 people who report the date upon which they receive their subscription copy of PEOPLE, 1% of the subscriber reporters served by the Lancaster, Pennsylvania plant received their copy of the issue of PEOPLE dated August 25, 1986 on August 15, 1986, 44% received their copy on August 16, 1986, 50% received their copy on August 18, 1986, and the remaining 5% received their copy on August 19, 1986. Affidavit of Mary N. Davis at 8. Nationally, 31% of the subscriber reporters received their copy of the August 25, 1986 issue of PEOPLE on August 16, 1986, 46% received their copy on August 18, 1986, 17% received their copy on August 19, 1986, and the remaining 6% received their copy on either August 20, August 21 or August 22, 1986. *Id.* Using the actual numbers in place of the percentages for nationwide distribution based on Time, Inc.'s subscriber reporter system, approximately 1,210,616 copies of the PEOPLE issue cover dated August 25, 1986 were received by subscribers on or before August 18, 1986. As early as August 16, 1986, there was an approximate total of 399,245 subscribers who had received their copy of that issue of PEOPLE. *Id.* at 9.

Retail sellers of PEOPLE in the geographical region in which plaintiff resides received the issues in question on August 18, 1986, and had them for sale either that same day, or no later than August 19, 1986. Time's Mem. at 4; Affidavit of Joseph Stern; Affidavit of John Lorenzo.

Including newsstand copies with subscription copies, virtually all of the 3,025,162 copies of the PEOPLE issues cover dated August 25, 1986, were distributed to the general public by August 20, 1986. The majority of the copies were distributed by August 18, 1986. Affidavit of Mary N. Davis at 9. Thus, the court concludes that substantially all of the PEOPLE issues cover dated August 25, 1986, were distributed to the general public by *August 20, 1986*, which was 1 year plus 4 days before plaintiff filed her case, which filing date was beyond the time permitted by the applicable statute of limitations.

### III. CONCLUSION

Accordingly, plaintiff's Fed.R.Civ.P. 60(b) motion for relief from the court's Order dismissing plaintiff's complaint with prejudice will be denied since plaintiff did not present any reason justifying the requested relief pursuant to Fed.R.Civ.P. 60(b)(1) or (6) and the statute of limitations had run. Since the complaint will remain dismissed as against the Time defendants, plaintiff's motion for extension of time to comply with pretrial memorandum Order will be denied. Defendant Leonard E.B. Andrew's motion to dismiss plaintiff's complaint, or in the alternative for summary judgment will be granted since the statute of limitations had run and for the other reasons stated in that defendant's memorandum supporting his motion.

An appropriate Order will be entered.

**368**

## ORDER

AND NOW, TO WIT, this 8th day of June, 1988, in accordance with the accompanying Memorandum, IT IS ORDERED as follows:

1. Plaintiff's motion for relief from Order dismissing plaintiff's complaint with prejudice is hereby *denied;*

2. Plaintiff's motion for extension of time to comply with Pretrial Memorandum Order is hereby *denied;*

3. Defendant Leonard E.B. Andrews' motion to dismiss plaintiff's complaint, or in the alternative for summary judgment is hereby *granted;* and

4. Plaintiff's complaint remains *dismissed with prejudice* as to defendants Time, Inc., Henry Anatole Grunwald, Donald M. Elliman, Jr., and Susan Reed, and is hereby *dismissed* as to defendant Leonard E.B. Andrews.