NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-4681
_____

JACQUELINE M. ROBINSON
F/K/A JACQUELINE M. COX;
JEFFREY M. ROBINSON,
                                            Appellants
                        v.

COUNTY OF ALLEGHENY;
ALLEGHENY COUNTY DEPARTMENT OF HUMAN SERVICES,
OFFICE OF CHILDREN, YOUTH AND FAMILIES;
BROOKE JORDAN; DEBORAH SADLER KIMES
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN
DISTRICT OF PENNSYLVANIA
(D.C. Civ. Action No. 09-1066)
District Judge: Honorable Donetta W. Ambrose
_____

Submitted Under Third Circuit LAR 34.1(a)
October 20, 2010
_____

Before: HARDIMAN, GREENAWAY, JR., and NYGAARD, Circuit Judges

(Opinion Filed:   December 21, 2010)

_____

OPINION
_____

GREENAWAY, JR., Circuit Judge

1

Jacqueline Robinson ("Robinson") and her husband, Jeffrey Robinson ("Mr. Robinson"),[1] appeal from the decision of the District Court dismissing their complaint as untimely filed. For the reasons set forth below, we will affirm the District Court's decision.

## I. Background

The parties are familiar with the facts and proceedings in the District Court. We will recite them only as is necessary to the discussion of the issues at hand.[2]

Robinson and David Bertus ("Bertus")[3] have a son, also named David Bertus ("DB"). (App. 29.) Beginning in May 2002, Robinson and Bertus were engaged in a custody dispute in which Bertus sought full custody of DB; Robinson counterclaimed for joint custody. (Id.) On November 20, 2005, while giving DB a bath following a weekend visit with Robinson, Bertus noticed scratches on DB's nose and redness on his buttocks. (Id. at 30.) Bertus took DB to the emergency room. (Id.) Dr. Eric Tham examined DB at the emergency room and concluded that the redness on DB's buttocks was the result of trauma. (Id.) Upon conclusion of the examination, a ChildLine[4] report

---

[1] Mr. Robinson proceeded pro se before the district court. On appeal, both Robinson and her husband are represented by the same counsel.

[2] Since we are reviewing a motion to dismiss, we, like the District Court, take the facts as alleged in Robinson's complaint.

[3] Robinson and Bertus were never married to each other. (App. 29.) Robinson is married to Jeffrey Robinson, also an appellant here. (Id.)

[4] According to the Pennsylvania Department of Public Welfare's website, ChildLine maintains a 24-hour hotline for reporting child abuse. When a report is made, "[a]ctions [ChildLine may take] include forwarding a report to a county agency for

was made, requesting that the Allegheny County Department of Human Services Office of Children, Youth and Families ("CYF") investigate the incident. (Id.) Brooke Jordan ("Jordan"), a caseworker with CYF, was assigned to the case. (Id.) Deborah Sadler Kimes ("Kimes") was Jordan's supervisor. (Id. at 29.) The Initial Referral Information Statement was prepared and dated November 22, 2005. (Id. at 31.)

CYF's investigation resulted in the filing of a ChildLine report against Robinson on January 3, 2006. The report, which was a matter of public record, described Robinson as a child abuser. (Id. at 34.) This finding impacted the then-pending custody case. (Id. at 35.)

Robinson administratively appealed CYF's finding of abuse. (Id. at 36.) Administrative Law Judge John A. Parse held hearings on September 26, 2006 and February 22, 2007. Judge Parse's Recommendation and Order, which concluded that there was no evidence that DB was in severe pain and there was no showing of criminal negligence, was adopted by the Pennsylvania Department of Public Welfare, Bureau of Hearings and Appeals, on June 4, 2007. (Id. at 39.)

On July 2, 2009, Robinson and her husband filed a complaint in the Court of Common Pleas of Allegheny County. The complaint averred five causes of action.

investigation as child abuse or general protective services, forwarding a report directly to law enforcement officials or refer[ing] the caller to local social services (such as counseling, financial aid and legal services)." ChildLine also maintains a database of pending complaints, a central register of confirmed child abuse reports, and a file of unfounded reports, which are reports awaiting expunction. CHILD LINE AND ABUSE REGISTRY, http://www.dpw.state.pa.us/provider/childwelfareservices/childlineandabuseregistry/S_00 1078 (last visited Nov. 3, 2010).

3

Count I claims that the defendants[5] "deprived Mrs. Robinson of her essential liberty and privacy interests families are guaranteed under the Fourth and Fourteenth Amendments of the Constitution and 42 U.S.C. § 1983 by invading the parent-child relationship." (Id. at 39.) Count II alleges that the defendants deprived Robinson of "her liberty and privacy interests without due process of law in violation of the Fifth and Fourteenth Amendments of the Constitution and 42 U.S.C. § 1983 by invading the parent-child relationship." (Id. at 44.) Count III alleges a violation of § 1983 based upon Allegheny County's and CYF's failure to instruct, supervise, train, and control Jordan and Kimes. (Id. at 47.) Count IV asserts that defendants' actions constituted intentional infliction of emotional distress. (Id. at 49.) Count V asserts a claim by Mr. Robinson seeking recompense for loss of consortium. (Id. at 50.)

Defendants moved to dismiss, arguing that the complaint was untimely. Specifically, defendants claimed that the statute of limitations on the first four counts had run. Further, since the claim for loss of consortium was derivative of the other claims, it too had run and should be dismissed. The District Court agreed with defendants and granted the motion to dismiss.

On appeal, Robinson and her husband argue that the statute of limitations did not begin to run until Judge Parse's Recommendation and Order was adopted by the Pennsylvania Department of Public Welfare, Bureau of Hearings and Appeals, on June 4, 2007, rather than on January 3, 2006, when the report of abuse was filed.

---

[5] Defendants are Allegheny County, CYF, Jordan, and Kimes.

4

The Robinsons argue that the later date should be used since this case is akin to a claim for malicious prosecution, a cause of action which cannot be brought until the defendant has obtained a dismissal of the original conviction. Alternatively, Robinson and her husband argue that the case is based on a claim of defamation, and that a claim of defamation cannot be brought until the defamatory statement is proved to be untrue. As discussed below, we disagree.

## II. Jurisdiction

The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331 & 1343. This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## III. Standard of Review

We exercise plenary review over a district court's grant of a motion to dismiss, pursuant to FED. R. CIV. P. 12(b)(6), for failure to state a claim. Grief v. Klem, 591 F.3d 672, 676 (3d Cir. 2010).

"In deciding a motion to dismiss, all well-pleaded allegations of the complaint must be taken as true and interpreted in the light most favorable to the plaintiffs, and all inferences must be drawn in favor of them." McTernan v. City of York, 577 F.3d 521, 526 (3d Cir. 2009). To withstand a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, --- U.S. ----, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks omitted).

## IV. Analysis

Claims brought under section 1983 are subject to the statute of limitations set forth by the states for personal injury torts. Wallace v. Kato, 549 U.S. 384, 387 (2007) (citing Owens v. Okure, 488 U.S. 235 (1989)). The parties agree that, under Pennsylvania law, the relevant statute of limitations period is two years. Their disagreement arises as to when the statute of limitations should begin to run.

"[T]he accrual date of a § 1983 cause of action is a question of federal law that is not resolved by reference to state law. . . . [I]t is 'the standard rule that [accrual occurs] when the plaintiff has 'a complete and present cause of action[;]'' that is, when 'the plaintiff can file suit and obtain relief.'" Wallace, 549 U.S. at 388 (quoting Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal., 522 U.S. 192, 201 (1997)). The Supreme Court has long held that "exhaustion of state remedies 'is *not* a prerequisite to an action under § 1983.'" Heck v. Humphrey, 512 U.S. 477, 480 (1994) (quoting Patsy v. Bd. of Regents of Fla., 457 U.S. 496, 501 (1982)). Heck, however, creates an exception for a specific set of cases — ones in which "state prisoners [are] attacking the validity of the fact or length of their confinement." Heck, 512 U.S. at 482. In those cases, the appropriate remedy is through pursuit of a habeas corpus petition, a course of action that must be completed successfully before a prisoner can seek relief pursuant to § 1983. Id.

Stated differently, in cases brought by state prisoners, pursuant to § 1983, "the statute of limitations poses no difficulty while the state challenges are being pursued, since the § 1983 claim has not yet arisen. Just as a cause of action for malicious

6

prosecution does not accrue until the criminal proceedings have terminated in the plaintiff's favor, so also a § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated." Heck, 512 U.S. at 489-90 (internal citations omitted).

Robinson first argues that the decision in Heck should control the outcome of this case. That is, Robinson claims that Heck acknowledges that she could not have brought her claim until the state court had dismissed the finding of abuse. Robinson's reliance on Heck is misplaced.

The claims raised in Robinson's complaint were complete upon the filing of the report of abuse on January 3, 2006. It was at that time that Robinson's parent-child relationship was invaded. The invasion of her privacy interests occurred regardless of the truth or falsity of the report of abuse. Similarly, the inadequacies associated with the investigation of alleged child abuse had already occurred by the time the report was filed. In sum, all of the harm of which she complains arose when the report was filed.

Unlike the situation in Heck, where a decision in the § 1983 case would necessarily implicate the issues being raised in a habeas proceeding, here there is no such conflict. A habeas proceeding, like a § 1983 action, is a collateral proceeding. Here, Robinson simply had a direct state administrative review process to follow.[6] Exhaustion of that administrative process is not required before bringing an action pursuant to § 1983. 13D Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure:

---

[6] Robinson does not argue that the finding of abuse was not reviewable because it was not final.

Civil 3d § 3573.4 (3d ed. 2007) ("The Supreme Court has consistently held since 1963 that a plaintiff need not exhaust state remedies, whether judicial or administrative, before bringing an action under § 1983.").

In support of her argument that her situation should be equated to that in <u>Heck</u> and malicious prosecution cases,[7] Robinson erroneously states that "there is no authority on the issue of when the statute of limitations begins to accrue in a case such as this when a state agency makes a determination that is subsequently reversed." (Br. for the Appellants 23.) As already noted, there is no requirement for a plaintiff to exhaust state remedies prior to bringing a § 1983 action. Therefore, this Court has held that the statute of limitations for a § 1983 action begins to run when a plaintiff has a complete cause of action. <u>See</u> <u>Dique v. N.J. State Police</u>, 603 F.3d 181, 187 (3d Cir. 2010). Robinson had a complete cause of action upon the filing of the report of abuse, and could have brought her suit as of that date.

Robinson also attempts to superimpose the rule established in <u>Heck</u> for cases involving malicious prosecution to cases alleging defamation. She argues "that she was, in essence, defamed by the placing in the public record that she was a child abuser." (Br. for the Appellants 21.) She continues by stating that "[i]t was not until this determination was reversed did the public statement become false," thus permitting her to bring her cause of action. (<u>Id.</u>) In Pennsylvania, a claim for defamation accrues upon publication

---

[7] Robinson does not raise a claim of malicious prosecution in her complaint. We therefore do not need to address the question of whether a plaintiff could bring a § 1983 claim based on malicious prosecution when the underlying case is a quasi-criminal proceeding, such as the one here, which involves an allegation of child abuse.

of the statement.  See, e.g., Graham v. Today's Spirit, 468 A.2d 454 (Pa. 1983); Dominiak v. National Enquirer, 266 A.2d 626 (Pa. 1970).  There is no support in Pennsylvania law to stray from the rule that a cause of action for defamation accrues upon publication.  Here, Robinson's cause of action arose on January 3, 2006, the date the report was filed; i.e., publication.  Her case, filed on July 2, 2009, is untimely.

## V.  Conclusion

For the reasons set forth above, we will affirm the District Court's decision dismissing Robinson's case as untimely.  The first four counts of the complaint were filed beyond the two year statute of limitations.  The final count is derivative of the other counts, and must also be dismissed.